JOHN BAST,

*vs.*

CHARLES LEONARD, et al.

Sundry exceptions to the admission and exclusion of evidence in this case considered and disposed of.

Where A contracts with B to furnish all material for, erect and complete a brick and stone building, all the materials to be of the best quality generally used for such purposes, and the work to be done in the most workmanlike manner, and A sub-lets to C the excavation and the brick and stone work, together with the furnishing of all materials therefor, it is the right and duty of A to see that the materials used by C·are of the best quality generally used for such purposes, and that the work performed by C is done in the most workmanlike manner, even though C be an independent sub-contractor. If the materials furnished, or the work done, are of such a character that the walls are unsafe and unfit for the purpose intended, and A knows this, or might have known it in the exercise of reasonable care and diligence, and goes on and makes use of the walls, and incorporates his own work with them, and makes payments to the sub-contractor, and accepts the work as it proceeds, and if in consequence of the unsafe and unfit character of the materials so furnished, and the work so done by C, the building falls and injures the premises of D, A is chargeable with negligence and liable for the damage resulting. The use of the walls by A for the purpose of doing the wood

Bast v. Leonard et al.

work upon the building, and his payment of C for the materials furnished and work done by him, are strong evidence to show that A accepted the same as performance, *pro tanto*, of the sub-contract, and that the character of both work and materials was satisfactory to and sanctioned by him. To entitle D. to recover, it is necessary for him to show some negligence on the part of A or his servants.

Whether the mere falling of a building in process of construction is evidence of such negligence on the part of the person constructing the same, or not, it may be evidence of such negligence, in connection with other facts and circumstances.

Sundry minor questions arising upon the instructions of the court, under the peculiar facts of this case, as to the measure of damages and other matters, considered and determined.

The plaintiff brought this action in the district court for Ramsey county, to recover damages to his property and business, occasioned by the falling of a building in process of erection by the defendants, as contractors, upon a lot adjoining the premises of the plaintiff. The complaint contains the usual allegations of negligence and carelessness on the part of the defendants, and that in consequence thereof the building in process of erection fell upon the property of plaintiff, causing damage, &c. Issue was joined, and the case tried, and a verdict rendered for the plaintiff. The defendants moved for a new trial, which was denied, and from the order denying the same, they appeal to this court.

The points presented by the appeal, are sufficiently stated in the opinion of the court.

Lampreys for Appellants.

Brisbin & Palmer for Respondent.

*By the Court*—Berry, J.—The defendants, partners, entered into a contract to furnish materials for, erect and complete (with the exception of painting) a three story brick and stone building for W. M. & J. A. Stees, according to

certain specifications—all of the materials to be of the best quality generally used for the purpose required—and the work to be done in the most workmanlike manner. The building was commenced and proceeded with, and (as the complaint alleges) when nearly ready for the roof it fell upon the plaintiff's adjoining premises, destroying and injuring plaintiff's property, depriving him of the use of his premises, putting him to expense in removing the rubbish, and injuring his business. The plaintiff claims that the falling of the building and the consequent damage to himself were the direct result of the careless and negligent manner in which the building was constructed, and that the defendants are responsible therefor.

The defendants deny that they entered upon the performance of the contract, or furnished any materials for, or did any work upon, the walls of said building, or in any way superintended or controlled the same or the work thereon, or had any notice of the kind of material used, and deny that the damage complained of occurred through any negligence, carelessness or fault on their part. And for a second defense defendants allege that they entered into a contract with one Seibert, whereby he undertook and agreed to do, or cause to be done all the excavation and masonry, and all brick and stone work for said building, and to furnish all materials for said work, except the cut stone, and that Seibert erected said walls and building by himself and servants exclusively; that the same were never accepted by the defendants, and that they had nothing to do therewith.

For a third defense defendants allege that the plaintiff had full notice and actual knowledge of the condition of the building, at and prior to the falling thereof. The plaintiff had a verdict for $600, and the case comes here upon appeal from an order denying a motion for a new trial.

The exceptions taken by the defendants to the admission and exclusion of testimony may be disposed of briefly. The contract between Stees and the defendants was properly received as part of the plaintiff's case, as showing what the defendants had undertaken to do, and for the purpose of connecting them with the construction of the building.

The question addressed to Stees, as to whether he had made any complaint to the defendants in regard to the manner in which the work was being done, was also proper, as tending to elicit testimony to show that the defendants had notice and knowledge of the character of the work, and that their attention was called to its alleged imperfections.

There was no substantial error in excluding the question asked Stees by defendants' counsel upon cross-examination, viz: "Did you not know that Mr. Seibert did the excavation under contract with Leonard & Sheire?" It is difficult to see how Stees' knowledge of this fact would be important; the contract inquired about was properly a part of the defendants' case; the question did not fall within the limits of legitimate cross-examination; it was substantially answered by the witness in the course of his subsequent testimony; the contract referred to was itself received in evidence, and the fact that Seibert made the excavation under the contract, was undisputed and abundantly proved.

The question addressed to Seibert by plaintiff's counsel, viz: "Who directed where foundations should be laid?" was properly allowed. It had some tendency (perhaps slight) in connection with other testimony in the case, to show that Seibert was under the direction and control of defendants in the performance of his sub-contract. Upon one theory, upon which as will appear hereafter the case seems to have been tried, the evidence would be relevant.

The questions as to how many anchors were necessary,

and how far they ought to have been put in, were also rightly allowed, as there was evidence in the case going to show that the anchors were furnished by defendants, the length of the same, and that defendants gave directions as to the number to be put in. The question put to the same witness as to whether or not he did the work under a contract with Leonard & Sheire, was not perhaps incompetent or immaterial; but it is unreasonable to suppose that its exclusion could have injured the defendants, as the contract itself was subsequently received in evidence, and in reality there was no dispute as to the fact that Seibert did the work under the same.

The plaintiff called John Grace who testified as follows: "Lived here twelve years; know this building; was there next morning after it fell; my trade has been that of a carpenter; been builder for twenty-one years." Question—"Are you able to give any opinion as to the cause of the falling of the building?" We think testimony responsive to the question would be both competent and material, and in the absence of special objection on *that* account, we see no reason why the proper foundation was not laid for the reception of an opinion from the witness. The same witness was also asked: "Could builders and contractors, present when mortar was being made, tell whether it was well made?" Upon the plaintiff's theory of the case, that the work was done under the superintendence of the defendants, the question was clearly proper, as there was testimony that one of the defendants was about the premises while the mortar was being made, and examined it, and upon the plaintiff's theory (which we think was correct) it was defendants' duty to see that suitable materials were used in the construction of the building. Under such circumstances, acquiescence in the use of unsuitable mortar would have some tendency to fasten negligence upon defendants.

Bast v. Leonard et al.

When plaintiff rested, defendants moved to dismiss the action, but as the questions arising upon the denial of the motion are substantially the same presented by the instructions given, and refused, they may be disposed of in considering the latter. The court gave a general charge to the jury, upon its own motion, and ten requests were submitted on the part of the plaintiff, and an equal number on the part of the defendants. The requests were in part given, and in part modified, defendants took many exceptions, plaintiff none. There was evidence in the case showing a contract between W. M. & J. A. Stees, as before stated, and showing that the defendants sub-let to one Seibert the excavating, the stone and brick work, together with the furnishing of all materials therefor, except the cut stone. There was also evidence showing that Seibert entered upon the performance of his sub-contract, and prosecuted the same until it was nearly completed. There was also evidence showing that from time to time during the progress of the work, the defendants put in the joist, window and door frames, and other wood work, the performance of which they reserved for themselves, and that from time to time they made payments to the sub-contractor. There was also evidence that the defendants were frequently at the building while the work was being prosecuted. There was also evidence showing that the building fell upon the plaintiff's premises, and evidence tending to show that this resulted from the imperfect and defective character of the work performed and materials furnished by Seibert; and without entering into further particulars it may be remarked, generally, that there was evidence in the case which made the instructions given pertinent, if they were not incorrect in point of law.

Without taking up and considering the instructions and requests in detail, (as the counsel for defendants has very

properly deemed it unnecessary to do in his brief,) we will state what we conceive to be the law applicable to this case. Under the contract with W. M. and J. A. Stees, the defendants were bound to construct the building, furnishing materials for the same of the best quality generally used for such purposes, and doing the work in the most workmanlike manner. This obligation is found in the express terms of the contract. If the defendants sub-let any part of the contract, whether to an independent sub-contractor or not, it was their right and duty to see that the materials used by the sub-contractor were of the best quality generally used for such purposes, and that the work performed by him was done in the most workmanlike manner. This obligation also follows from their contract. If the materials furnished, or the work done by such sub-contractor, were of such a character that the walls in this case were unsafe and unfit for the purposes for which they were intended, and the defendants knew this, or might have known it in the exercise of reasonable care and diligence, and went on and made use of the walls, and incorporated their own work with them, and made payments to the sub-contractor, and accepted the work as it proceeded, and if in consequence of the unsafe and imperfect character of the materials so furnished, and the work so done by the sub-contractor, the building fell upon and injured the premises and property of the plaintiff, the defendants are chargeable with negligence and liable for the damage resulting. This proposition is a logical consequence of those preceding it. The use of the walls by the defendants for the purpose of doing the wood work upon the building, and their payment of the sub-contractor for the material furnished and work done by him, would be strong evidence to show that the defendants accepted the same as performance, *pro tanto*, of the sub-

Bast v. Leonard et al.

contract, and that the character of both work and materials was satisfactory to and sanctioned by them.

To entitle the plaintiff to recover, it was necessary to show some negligence on the part of the defendants or their servants. Whether the mere falling of a building in process of construction is evidence tending to show negligence on the part of persons constructing the same, or not, it may be evidence of such negligence, in connection with other facts and circumstances. If not accounted for by showing that it was occasioned by the act of God, by the acts of third persons, or by some other cause independent of the negligence of its builder, the *fact* that it fell, in connection with other facts showing that unfit materials were used in its construction, or the work upon it imperfectly performed, would have a clear tendency to show that it was not constructed as safely as a due regard to the rights of adjoining proprietors required. Such, in our opinion, is the law applicable to the more important questions in the case, and though not expressed in the same language, we think it was substantially given to the jury in the charge of the court. If, however, upon the points considered there is any substantial difference between the views which we have expressed, and the charge, it is because the court charged more favorably for the defendants, than the law, as we understand it, would warrant; but of this the defendants cannot be heard to complain. It remains only to consider two or three minor points made by defendants in reference to particular portions of the charge. The court instructed the jury: "That if they found for the plaintiff, he was entitled to a reasonable compensation for the use of his land while it was incumbered, and for the money reasonably paid out by him to remove the rubbish, if the defendants failed to remove it in a reasonable time after notice."

It is objected to this instruction that "it is not alleged in the complaint, that the use of plaintiff's premises was of any value whatever, or that he was put to expense in any sum whatever, for removing materials, or that his business was of any value whatever." The complaint alleges that by reason of the negligence of defendants, and the falling of the building, &c., plaintiff has been deprived of the use of his premises, put to great expense in removing the rubbish, injured in his business as innkeeper, and been deprived of large gains and profits in that behalf, in all in the sum of two hundred dollars. Though the complaint is not in this respect to be commended, and though it might have been objected to for indefiniteness and uncertainty, the allegation of the damages in a gross sum would be sufficient to warrant the reception of evidence in regard to the different items of damage of which the aggregate is alleged to be composed, and therefore of course sufficient to justify the charge. *Allis vs. Day*, 14 *Minn.* 518. The court also instructed the jury at the request of the plaintiff: "That the placing of the joist on the walls of each story of said building; the payment for each story according to the rate agreed upon; the putting in of the door and window frames in each story, and furring each story of said building by said defendants, is *strong* evidence *to show that* the defendants were satisfied with the mason work done, and stone and mortar furnished for each story, and accepted the same as performance *pro tanto* of Seibert's contract with them." It is said that the court in this instance assumed facts of which there was no evidence. But an examination of the paper book satisfies us that there was no substantial and material fact stated, of which there was not some evidence. It is also said that the court erred in instructing the jury that the facts stated were *strong evidence*, &c.

The court, however, did not assume to instruct the jury that the facts stated *proved* the acceptance, &c., but only to place the evidence in its appropriate class as evidence entitled, as it certainly was, to great consideration.   But although we think there was no substantial error in the instructions, under the circumstances of this particular case, we cannot forbear to say, that the court went very near the boundary line which separates the province of a judge, from that of a jury.   The court further charged: "That the jury may take into consideration the acts of the defendants occurring immediately after the fall of the building; such as the removing the stone, mortar and other rubbish from the premises of the plaintiff, and the taking down of portions of the standing walls, as tending to show a general performance and supervision of the contract "A," (this was the contract between the defendants and W. M. & J. A. Stees,) and the work done under it; and the continuance of such supervision until such removal was effected."   The court further charged: "That the jury may consider the acts last aforesaid, as showing the interpretation of the defendants of their duties and liabilities relative to the subject matter in controversy in this action; and as tending to contradict the evidence of defendants herein in relation thereto."   The defendants' counsel states in his points that the court erred in giving these instructions, but no particular error is pointed out, nor is any reason given for his general assignment of error.   In view of what we have before said in reference to the law applicable to this case, we do not perceive that the instructions are of any special importance.   The case would appear to have been tried with reference to several possible constructions of the law, and upon the principle of taking all the chances.   These instructions appear to have been given with reference to one theory upon which the case was

tried, viz: that even if the defendants were not bound by their contract with Stees, to see that Seibert furnished such material, and performed such work as that contract called for, and therefore not responsible on account of any such obligation for damages resulting from his failure so to do, still if they supervised, directed and controlled the work they would be liable to the plaintiff. That this, upon the theory referred to, would have been good law, there is no room for doubt. We do not then perceive how these instructions could have prejudiced the defendants, though as before remarked, they appear to us to possess no particular importance in the case. To the last position taken by the defendants' counsel, viz: that the evidence shows that the plaintiff was guilty of contributory negligence, and that therefore he cannot recover, the verdict of the jury, upon all the testimony in the case, and under the sufficiently favorable charge of the court, is an answer.

The order denying a new trial is affirmed.