### Axel T. Lindholm

*vs.*

### . The City of St. Paul.

The charter of the city of St. Paul provides that the " common council shall have the care, supervision and control of all public highways, bridges, streets,  *  *  within the limits of said city, and shall cause all streets, which may have been opened and graded, to be kept open and in repair." *Held*, that this does not make the duty to keep open and in repair dependent upon the establishment of what is known as the *grade* of the street, or upon the final completion of grading in conformity to such established grade, or upon a formal opening of the street, as for instance by a resolution of the common council, but that, if a portion of such street has been opened and graded by the city, (to whatever extent it may be opened and graded,) for the express and avowed purpose, and with the result, of inviting and accommodating public travel thereon as the same is opened and graded, it is the duty of the city to keep such portion open and in repair.

Defendant requested the court to charge the jury :  " That if the defendant, (the city,) had no notice of any defect in the highway it is not responsible." *Held*, that the court did not err in adding to such requested instruction the following, viz. :  " But if the defect be open and notorious, notice is presumed."   *Allis vs. Day*, 14 *Minn.* 518 ; *Bast vs. Leonard*, 15 *Minn.* 312 ; *Cleveland vs. St. Paul*, 18 *Minn.* 279 ; *Shartle vs. Minneapolis*, 17 *Minn.* 308 ; *More vs. Minneapolis*, *Oct. Te.* 1872, *followed.*

The plaintiff brought this action in the court of common pleas for Ramsey county to recover damages for injuries occasioned by the overturning of his buggy as he was driving through Seventh street in the City of St. Paul, at a place where that street crosses a deep ravine upon a high embankment, made by the city for the purpose of carrying the street across

the ravine. Meeting a loaded wagon at a narrow point in the street, the plaintiff turned out so as to drive near the edge of the embankment, which, being in a defective condition, gave way and precipitated the plaintiff, with his horse and buggy, into the ravine.

The injuries suffered by the plaintiff are thus stated in the complaint : " That the plaintiff thereby sustained great bodily injury, and was made sick, and was absolutely prevented from attending to his business for the space of two months, and has ever since been hindered from pursuing his business with his former customary attention, and was disfigured in his person, which injuries and disfigurement are permanent in their character and effects; and was made to suffer, and has ever since said accident suffered, and still does suffer great pain of body, and was put to great expense for nurses and physicians in order to save his life, which was greatly imperilled by said injuries, and in trying to be cured, to his damage in the sum of five thousand dollars ; and that the said buggy and harness were thereby broken and injured to the plaintiff's damage in the further sum of two hundred dollars."

Issue was joined and the action was tried by a jury who found a verdict for the plaintiff. The defendant appeals to this court from the order of the court below refusing a new trial.

The evidence given at the trial, and all other matters necessary to a full understanding of the case are stated in the opinion.

W. A. GORMAN, for Appellant.

BIGELOW, FLANDRAU & CLARK, for Respondent.

*By the Court.*—BERRY, J.—The plaintiff brings this action to recover damages for injuries occasioned to his person and

property by the alleged negligent failure of defendant to keep in repair a public street called Seventh street. *Ch.* 26, *Sp. Laws* 1868, (defendant's charter,) in section 1, sub-chapter 7, enacts that " the common council shall have the care, supervision and control of all public highways, bridges, streets, * * * within the limits of said city, and shall cause all streets, which may have been opened and graded to be kept open and in repair."

The evidence in this case tended to show that Seventh street was at the time of the accident, (August, 1871,) and for many years before had been, a public street and highway of said city ; that as early as 1864, it had been " partly opened and partly graded " by defendant at the place where the acci_ dent occurred, and for a considerable distance from said place upon each side thereof ; that the embankment upon which the accident occurred was constructed by defendant in 1864, for the express and avowed purpose of making a " passable roadway " over the portion of Seventh street where it was constructed ; that from time to time defendant had repaired said embankment, and that said Seventh street, during all the time while it remained so " partly graded," " has been used and traveled upon by the public generally."

The phrases, " partly opened," and " partly graded," are found in a stipulation signed by the city attorney, and admitting certain facts for the purposes of the trial. It might not be very easy to define the *exact* and *full* meaning of these phrases. Fortunately, however, such definition is not neces‧ sary in this case; for whatever rational sense is attributed to these phrases, the evidence, of which the admissions contained in them form a part, taken as a whole clearly tends to show that that portion of Seventh street where the accident happened was opened and graded by the defendant, to the extent that it was opened and graded, (whatever that may be,) for

the express and avowed *purpose,* and with the *result,* of inviting and accommodating public travel thereon, as the same is opened and graded. *Bowman vs. City of Boston,* 5 *Cushing* 1; *Com. vs. Boston,* 16 *Pick.* 448. If so, it was the duty of the city to keep such portion open and in repair.

The charter provision before quoted requires " all streets, which may have been opened and graded, to be kept open and in repair." This does not, as the city attorney appears to claim, make the duty to keep open and in repair dependent upon the establishment of what is known as the *grade* of the street, or upon the final completion of grading in conformity to such established grade, or upon a formal opening of the street, as, for instance, by a resolution of the common council. The construction thus contended for in behalf of the defendant, is not only not necessary nor natural, but it would work great practical injustice. It would permit the city authorities to improve a street, (by grading it and otherwise,) so far as to adapt it to public travel, and to invite and encourage public travel therupon by improvements, repairs and other means, and thus, in effect, to hold out to the public that it was a safe highway, without incurring any responsibility for injuries arising from the negligent disrepair of a highway, which the public had in this manner been induced to make use of. This would be a plain disregard of the obligations of good faith and common honesty, as well as of the duty imposed by the charter provision before quoted, which commits " the care, supervision and control of all public highways, bridges and streets, within the limits of said city," to the common council.

It is further contended by defendant's counsel that the verdict in this case cannot be sustained, because there was no evidence of notice to the defendant, actual or constructive, of the existence of the defect, to which the accident is attributed. No evidence of actual or express notice was offered, but cer-

tainly the testimony of several witnesses, tending to show the unsafe and defective condition of the street, at the place of the accident, both at the time when the accident occurred and for a long time before, was proper to be submitted to, and considered by the jury upon the question of constructive notice.

In this connection we may as well notice the direction given to the jury upon this topic. Defendant requested the court to instruct: " That if the defendant, (the city,) had no notice of any defect in the highway, it is not responsible." The court gave the instruction asked, adding to it, however, these words, viz.: " But if the defect be open and notorious, notice is presumed," to which addition defendant excepted. The evident meaning of the words added by the court, (especially when taken in connection with the charge given by the court of its own motion on the same topic,) is that, if the defect be plain to be seen, and generally known to exist, notice to the city is to be presumed. This is certainly not erroneous in view of the rule, that proof of circumstances, from which it appears that the defect ought to have been known and remedied by the city or its proper officer, is sufficient in the matter of notice. *Cleveland vs. St. Paul,* 18 *Minn.* 279 ; *Moore vs. Minneapolis, Oct. Tr.* 1872. *Dillon Municip. Corp.* § 790 ; *Mayor vs. Sheffield,* 4 *Wallace,* 195 ; *Requa vs. The City of Rochester,* 45 *N. Y.* 129 ; *Donaldson vs. The City of Boston,* 16 *Gray,* 511 ; *Howe vs. Lowell,* 101 *Mass.* 100 ; *Dewey vs. Detroit,* 15 *Mich.* 307.

The court refused to read to the jury the following instruction requested by the defendant, viz.: " That the plaintiff seeks to recover, because the embankment, or passable road, made by the city, was not wide enough for a large population to travel safely on. He must show that the city had the means to enlarge and widen it." Defendant's exception to the refusal was not well taken, for the reason that the first

branch of the request contains an unwarrantable assumption of fact.

If the second branch stood alone, so as to be relieved of this objection, it was properly refused, for the reasons given in *Shartle vs. Minneapolis,* 17 *Minn.* 308.

Defendant's objection, that the complaint is not sufficient to nable plaintiff to recover damages for medical attendance, loss of time, &c., is disposed of by *Allis vs. Day,* 14 *Minn.* 518, *and Bast vs. Leonard,* 15 *Minn.* 312.

To the defendant's position, that the evidence showed contributory negligence upon plaintiff's part, which should prevent his recovery, it is a sufficient answer that, as there was evidence *pro* and *con.* in regard to such negligence, the question as to its existence was properly submitted to the determination of the jury. As to the liability of the defendant for damages occasioned by its neglect to keep its streets in repair, we need add nothing to what is said in *Cleveland vs. St. Paul, supra.*

We have not deemed it necessary to take up separately the points made upon defendant's brief, but we believe that they are all covered by the views above expressed.

Order refusing new trial affirmed.