Furnell v. The City of St. Paul.

## MILTON H. FURNELL

*vs.*

## THE CITY OF ST. PAUL.

The rule that a municipal corporation charged with the duty of keeping its streets in repair, and of exercising a general oversight in regard to their condition and safety, is bound to maintain them free from all defects or obstructions which by the use of ordinary vigilance and care it can detect and remove, is applicable to sidewalks.

The duty of the city of St. Paul, under its charter, to supervise and take care of sidewalks and cause them to be kept in good repair, is not dependent upon the fact that such sidewalks were constructed or caused to be constructed by the city.

The care and supervision of sidewalks imposed upon the city of St. Paul requires it to take notice of the certain tendency of wood sidewalks to decay.

The city of St. Paul is liable for the neglect of the street commissioner, who is charged under the charter to keep the streets in repair, notwithstanding he derives his authority from an election by the people, and not from an election by the common council.

Plaintiff brought this action in the district court for Ramsey county, to recover damages for injuries sustained by him while walking upon a sidewalk on Wabasha street in Saint Paul, caused, as he claimed, by defects in such sidewalk. Issue was joined, and upon the trial testimony was given on the part of the plaintiff, for the purpose of showing the nature, character and circumstances of the injury, and the defect in the sidewalk. There was no testimony that the defendant, or any of its officers, knew of the condition of the sidewalk, or had been notified of its defects. Defendant offered no testimony. The jury rendered a verdict for the plaintiff, upon which judgment was entered, and from which defendant ap-

peals to this court. Various exceptions were taken by the defendant to the rulings and charges of the court, which are sufficiently stated in the opinion.

W. A. GORMAN, for Appellant.

I. V. D. HEARD, for Respondent.

*By the Court.*—BERRY, J.—This action is brought to recover damages for personal injuries sustained by plaintiff in falling through a defective sidewalk on the west side of Wabasha street, in the city of St. Paul, just above Eleventh street. *Ch.* 26 (defendant's charter,) *Sp. Laws* 1868, in *section* 1, *sub-chapter* 7, enacts that " the common council shall have the care, supervision and control of all public highways, bridges, streets,   *   *   *   within the limits of said city, and shall cause all streets which may have been opened and graded, to be kept open and in repair." " The general rule is that a municipal corporation charged with the duty of keeping its streets in repair, and of exercising a general oversight in regard to their condition and safety, is bound to maintain them free from all defects or obstructions which by the use of ordinary vigilance and care it can detect and remove." *Cleveland vs. City of St. Paul*, 18 *Minn.* 279, *and cases cited.*

That this rule is applicable to sidewalks, which are nothing but parts of streets, see *Moore vs. Minneapolis.* 19 *Minn.* 300 ; *Manchester vs. Hartford*, 30 *Conn.* 118 ; *Bloomington vs. Bay*, 42 *Ill.* 503.

The appellant claims that there was no evidence in this case to show that the city was bound to take care of Wabasha street and keep it in repair ; no evidence that it was ever " accepted, or worked, or brought under the care of the city or under its control, or officially opened by it." In view of

the patent and notorious fact that this street is one of the best improved and most thickly settled and most frequented thoroughfares in the city, upon which are situated the court house, post office, custom house, the capitol, several churches and very many places of business and private residences, it would be an outrage to treat a claim of this kind with any technical indulgence. While we do not discover such clear and distinct testimony as to the character of the street as should have been adduced in the exercise of due care, the plaintiff testified that it " is a public street of St. Paul," and the same thing is, we think, admitted by. the pleadings when properly construed. But what under the circumstances of this case we hold to be decisive, is the fact that it nowhere appears that any claim of the kind referred to was made until the cause reached this court, in connection with the further fact that the court below was permitted, without objection or exception, to instruct the jury upon the basis and to the effect that Wabasha was a street, which the city was by its charter bound to use reasonable diligence to keep in good repair. The case was, then, evidently tried upon the theory that such was the character of the street in question, and we presume that formal proof of facts establishing such character was dispensed with, upon the understanding that there was no dispute in regard to the same. Upon these grounds we shall take it as established that Wabasha street was, and for a considerable time had been, a public street of St. Paul, of which by the charter provision before quoted the common council have the care, supervision and control, and which they are bound to cause to be kept open and in repair.

The complaint charges that " defendant did not keep said sidewalk at said place in good order and repair, but on the contrary caused the same to be improperly and unsafely con-

structed and allowed the boards to be loose on the sleepers, and unnailed and to rot, and while the same was in such condition by the gross negligence of said defendant, the said plaintiff did      *      *      *      without any negligence or fault of plaintiff, but solely through the said condition of said sidewalk as aforesaid, and solely through the negligence of said city in not properly and safely constructing said sidewalk, and allowing said boards to be loose and unnailed and to rot as aforesaid, while he, said plaintiff, was lawfully walking over said sidewalk, step on a loose board of said sidewalk, which sunk under plaintiff's foot, and whereby plaintiff's foot went down below said sidewalk, and his ankle was sprained," &c.

No evidence was offered to show that the sidewalk in question was constructed or caused to be constructed by the defendant. For this reason defendant argues that plaintiff did not make out a case. But the charter provision before quoted does not make the duty of the common council to supervise and take care of sidewalks, (as parts of streets,) and to cause them to be kept in good repair, dependent, in any degree, upon the fact, that they were constructed or caused to be constructed by the city. The duty is by the language of the charter imposed irrespective of any such consideration. The object is to secure the convenience and safety of persons having occasion to use the street. To relieve the city of the obligation to see that a sidewalk is in safe condition whenever it was not constructed by or at the instance of the city would be to lose sight of this object altogether in such case. It was, therefore, unnecessary to show that the city constructed or caused to be constructed the sidewalk in question, *Bloomington vs. Bay, supra.* In the language of the charge given to the jury, and in accordance with the principle of the general rule hereinbefore laid down, the defendant under its

charter was bound to exercise reasonable care in keeping the streets in a safe condition for public travel, which requires that it should use reasonable diligence in ascertaining and remedying defects in streets, and in sidewalks as parts thereof, *Moore vs. Minneapolis,* 19 *Minn.* 300.

After instructing the jury to this effect, the court proceeded with its charge as follows, viz.: " It has been argued by the city attorney, that in order to charge the defendant with negligence, notice should have been given to the city authorities of the defective state of the sidewalk. Upon this point I charge you, that if the defective condition of the sidewalk was the result of their own negligence, no such notice was necessary. There may be cases when it is necessary for the plaintiff to show that the city authorities had notice. But if, as in this case, they are bound by the charter to exercise a care and supervision over the streets, they cannot allow sidewalks to become old, and rotten, and dangerous, and then defend against the consequence by alleging want of notice. This is supposing that the dangerous condition of the sidewalk arose from neglect. If, however, it did not arise from neglect, then notice was required. As to the notice required, it was not necessary to prove that the authorities had been actually told of the defect. If the fact was open and notorious, that was sufficient." The defendant excepted to this part of the charge, but we think the exception must be overruled. The testimony, and the only testimony in the case to which the instructions thus excepted to were applicable, was that of the plaintiff himself and was as follows, viz.: "About the first of June last I was going up Wabasha street; * * the first I knew a plank went down under my foot and sprained my ankle; * * I examined and found the plank loose; the nails were out; I did not notice it before at any time; I noticed that the sidewalk there was rotten; this

plank rested on three sleepers; I think, however, there was
no sleeper under it when it went down; it seemed to be
rotted off; it was not nailed, and several others were not
nailed, and I noticed several others loose at the time; there
might have been four or five; I think it was something like
a foot from the top of the plank walk to the ground where
my foot went down, and that naturally threw me forward,
and turned my foot a little." The words, "it seemed to be
rotted off," in the connection in which they occur, would
appear to refer to the plank, and if so they would support
the specific allegation of the complaint in that particular.
But if, as the counsel on both sides seem to think, these
words refer to the sleepers, even then they go to sustain the
general allegation that defendant did not keep the sidewalk
"in good order and repair," which would, we think, be suf-
ficient in the absence of any objection to the introduction of
the testimony. Or if upon strict construction it should be
claimed, that the general allegation was so far narrowed by
the specific allegation following that nothing could be proved
under the former, which could not under the latter, we see
no reason why the jury might not be warranted in inferring
that the reason why the planks were loose and unnailed, was
that the sleepers being rotten, there was nothing there to
which the planks could be nailed. In addition the plaintiff
testified, as we have seen, "that the sidewalk there was rot-
ten." There appears to have been no cross-examination of
the plaintiff as to the character and condition of the side
walk, nor any testimony in the case from the mouth of any
other witness in regard to the same. Why the trial took this
course we can only conjecture. Perhaps it was because it
was thought that a cross-examination or additional testimony
would only damage the defense. Perhaps because there was
no disposition to deny the facts as stated by the plaintiff, or

Furnell v. The City of St. Paul.

that the sidewalk was in dis-repair. All things considered, although it is to be regretted that the testimony was not more explicit one way or the other, we are unable to say that the jury were not warranted in coming to the conclusion that the plaintiff's injury was occasioned by the rotten condition of the plank, which gave way beneath him, or by the fact that the planks were loose and unnailed in consequence of the decay of the sleepers. Proof that either of these causes brought about the injury complained of would sufficiently satisfy the material allegations of the complaint, and would make the foregoing instructions of the court applicable to the case. And the same remark may be made in regard to the proof that the sleeper was rotten, if the view before suggested as to that proof is correct. We are further of opinion that the instructions referred to were not only applicable to the facts, but that they were substantially and practically correct in point of law under the general rule mentioned in the early part of this opinion. The "care, supervision and control" of a sidewalk being imposed upon defendant, no argument is needed to establish the proposition, that such care and supervision require notice to be taken of the certain tendency of wood sidewalks to decay. This tendency is the result of natural causes, whose operation is so constant, familiar and common as to be known to everybody. To call that care and supervision which did not take into account this tendency to decay, would be a contradiction in terms. Such care and supervision would be a positive neglect of legal duty. See *Manchester vs. Hartford, supra ; Barton vs. the City of Syracuse,* 36 *N. Y.* 58 ; *McCarthy vs. Syracuse,* 46 *N. Y.* 194 ; 30 *Conn.* 118. It is to neglect of this kind that we understand the court to refer in the first branch of the instructions under consideration, a neglect to take notice of and act upon that of which everybody has notice. The idea of

notice is, therefore, included in such neglect, so that no other notice of a defect in a sidewalk arising from natural decay is necessarily required; neither an actual notice, nor such con·structive notice as may arise from the open and notorious character of a defect. While the evidence in this case was not so clear and explicit as it seems to us it might have been made, it cannot be said in view of the fact that Wabasha was and long had been emphatically a public street, that there was not evidence from which the jury could reasonably and properly infer such a failure to care for and supervise this sidewalk as constituted positive neglect of legal duty on the part of defendant of the kind above referred to—a neglect from which the defective condition of the sidewalk and plaintiff's injury resulted, and for which defendant should, on familiar principles, be held responsible. *Bloomington vs. Bay, supra.*

As to the latter branch of the instructions under consideration, to-wit, that in which the jury were instructed that notice was necessary under certain circumstances, it was clearly correct in the abstract. See *Cleveland vs. St. Paul, supra ; Moore vs. Minneapolis, supra ; Lindholm vs. St. Paul,* 19 *Minn.* 245. If in considering upon their verdict the jury reached this branch of the instructions, then it was for them to determine whether upon the testimony as to the condition and appearance of the sidewalk, its defects were open and notorious. As to this question, while it must be admitted that the testimony was exceedingly meagre, we think there was something for the consideration of the jury.

The last point made by the city attorney is, that the defendant is not liable for the neglect of the street commissioner, who is charged under the charter to keep the streets in repair, because he is " an independent officer, deriving his authority from the election by the people, and not from" the

defendant. We find no support for this proposition in the authorities cited, and can discover no ground of principle upon which it can be sustained. It seems to us that the street commissioner in his oversight of the streets is simply the agent through whom the common council, to some extent, exercise the care and supervision of streets imposed upon the city as a corporate duty; and such commissioner is expressly made a subordinate of the council by *section 9, subchapter 3* of the city charter, *ch. 26, Sp. Laws* 1868; *Dillon on Corporations, §772; Mayor of New York vs. Fruze, 3 Hill,* 612. If the manner of his election is of any importance, we do not see any reason why his election by the electors of the city should make the city, as a corporation, any less responsible for his act, than if he had been elected by the common council.

Judgment affirmed.