THOMAS LORD ET AL.

v.

MARY E. OWEN.

*Contracts—Conditions—Breach — Construction — Evidence—Experts—Damages.*

1. Expert evidence should not be received as to the meaning of a condition in a contract, to understand which no previous study or habit is necessary.

2. In an action brought for the recovery of damages for the breach of a contract relating to the manufacture and sale of a patent medicine, this court holds, in view of the introduction of improper evidence, touching the meaning of a certain term therein, and as a basis for estimating damages, evidence as to the sales and profits before the making thereof, that the verdict for the plaintiff can not stand.

[Opinion filed February 12, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Mr. HARVEY B. HURD, for appellants.

Messrs. WILLIAM H. SISSON, C. F. GOODING and WILLIAM D. COPPERNOLL, for appellee.

GARNETT, J. Appellee sued appellants in assumpsit to recover damages for the breach of a contract, dated July 4, 1876, the result being a verdict and judgment for $6,000 against appellants, which they now seek to reverse. Appellants are wholesale druggists, carrying on their business in Chicago, and by the contract sued on, appellee sold to them the sole right for ten years to manufacture and sell a patent medicine known as "Owen's Compound Fluid Extract of Buchu," of which appellee was proprietor. They agreed to manufacture the medicine from a receipt furnished by appellee, put up in bottles made from a certain mold, wrap the bottles in circulars printed from stereotyped plates to be furnished by appellee, to advertise and sell the medicine as "Owen's Fluid Extract of Buchu," vigorously push the manufacture and sale of the medicine, using all necessary and proper means to that end, and pay appellee $12 for each gross of bottles sold. It was also agreed that upon the failure of appellants to keep their part of the agreement, all rights thereby granted should cease, and on the expiration of the agreement appellants should return the plates, mold and receipt to appellee in as good condition as when received.

This suit was brought by appellee after the expiration of the ten years, the declaration charging that the defendant did not put up and sell the medicine in bottles made from the molds furnished them by the plaintiff, and did not vigorously push the manufacture or sale of the medicine, and did not return to the plaintiff the stereotyped plates, molds or receipt. Other breaches are alleged, but not insisted on by the plaintiff.

On the trial the plaintiff was permitted, against the objection of defendants, to introduce in evidence the opinions of witnesses as to the meaning of the phrase, "Vigorously push." A wholesale druggist, called as a witness by appellee, testified that one of the ways of "vigorously pushing," is advertising in

the newspapers. A newspaper advertising agent testified that his construction of the contract would be to advertise freely in the papers. Both of these witnesses admitted that advertising patent medicines in newspapers was not a custom, but depended on the agreement of the parties. There was no evidence that the phrase was used in any business, or that it had a technical signification, nor do the witnesses appear to have had any better qualification for interpreting it than the jury. To understand its meaning no course of previous study or habit was necessary. In such cases expert or opinion evidence should not be received. Linn v. Sigsbee, 67 Ill. 75; City v. McGiven, 78 Ill. 347; Baptist Church v. Brooklyn Fire Ins. Co., 28 N. Y. 153; Reid v. Piedmont & A. Life Ins. Co., 58 Me. 421.

The admission of this evidence was error. The defendants did not pretend to have used the newspapers as an advertising medium.

The court also erred in allowing evidence to be given for plaintiff, to the effect that, previous to 1876, the medicine had been advertised by posters, and printing on the sides of walls and fences, and in books, fancy cards, tin signs, card and board signs, nailed up, and on banners carried around the street by boys. The reasonable inference from the admission of this evidence was, that the court regarded that kind of pushing as a " proper means to that end," and as the defendants did not pursue the same course, the conclusion was easily reached that they had broken their contract. For the purpose of furnishing a basis to estimate the damages, the plaintiff offered evidence of the amount of sales of the medicine, and profits thereon, before the contract in suit was made. The evidence was objected to by the defendants, the objection was overruled, and they excepted. No other evidence could have been relied upon by the jury in returning a verdict for $6,000. The law does not recognize that method of estimating damages. " Past success in the same, or a similar enterprise will not do. Conditions may not always be the same." Union Refining Co. v. Barton, 77 Ala. 148; Masterton v. Village of Mt. Vernon, 58 N. Y. 391; Hair v. Barnes, 26 Ill. App. 580.

The only substantial damage proved was in the failure to return the stereotyped plates. Their value was proven to be $34 only, and beyond that, we are unable to discover anything in the record to support a verdict for substantial damages. The amount found by the jury is oppressive and is manifestly built upon the theory that the defendants were required by the terms of their contract to use the newspapers freely, and to employ the various other methods of advertising described by plaintiff's witnesses. Had they done so, the conjecture was that the sales would have been large enough to pay the sum of $6,000 as royalty to the plaintiff, over and above what she actually received. But as the law demands something more definite than guessing in such cases, the judgment must be reversed and the cause remanded for a new trial.

