# Little *v.* Lichkoff.

|98 321|
|109 141|

*Action for Damages on Attachment Bond.*

1. *Refreshing memory of witness by book entries; cross-examination.* A party, after having testified to the correctness of book entries, which he has examined to refresh his recollection, and to the fact that they were made in the usual course of business, may be cross-examined as to whether some of the entries had not been made since the origin of suit, without making the entries evidence in the cause, and although the book containing them has not been offered in evidence.

2. *Reasonable market value; how may be shown.* —There is no error, in a suit for wrongful attachment of a stock of goods, in allowing plaintiff to give it as his opinion that the cost price, with a certain

21–98

[Little v. Lichkoff.]

per cent. added, was the reasonable market value of the goods at the time of the attachment, unless it appears that such estimate is purely speculative.

3. *Evidence of conspiracy; right to cross-examine.*—There having been evidence of a conspiracy between plaintiff and another to defraud creditors by false transfers or sales shortly before the attachment, it was competent to ask plaintiff on cross-examination if such other person had not changed the labels on a quantity of goods obtained from him.

4. *Same; right to impeachment of witness.*—Said person having been offered by plaintiff as a witness, and having testified that the goods obtained had been bought at the full market price, it was competent to ask him on cross-examination, with a view to impeachment, whether he had not told another that he had been buying goods of plaintiff for much less than their market price.

5. *Same; contradicting former statements of witness.*—A witness for plaintiff, having testified that plaintiff's credit at a bank, of which witness was a member, was good before the attachment, and 'after the attachment was destroyed, it was competent for defendant to ask on cross-examination if plaintiff had not been refused credit at the bank just prior to the attachment.

FROM Circuit Court of Tuscaloosa.

Tried before the Hon. S. H. SPROTT.

Action by Sam Lichkoff against John Little and others to recover damages for the breach of an attachment bond, alleging that the attachment had been wrongfully and vexatiously sued out.

The testimony for plaintiff tended to show that prior to and at the time of the levy of the attachment he was a merchant doing business in the city of Tuscaloosa; that before the levy of the attachment his credit was good, but since that time it was destroyed; and that by reason of the levy of the attachment his stock of goods, which was worth $5,300, was sacrificed at the sheriff's sale for $3,100, and that he was greatly damaged by the suing out of the attachment. The ground for the issuance of the attachment was that plaintiff was fraudulently disposing of his goods for the purpose of hindering, .delaying, and defrauding his creditors; and the testimony for defendants tended to prove the truthfulness of said ground for attachment. The only assignments of error which are presented for the consideration of this court are based on exceptions reserved to the rulings of the lower court upon the evidence. Upon the introduction in evidence of the deposition of the witness Frieder, the plaintiff moved to exclude from the jury the several answers hereinafter copied, and defendants separately excepted to the court's sustaining said motion to exclude the same. In answer to the question as to whether or not said witness knew that Lichkoff was about to fail, he answered, "We knew that Sam Lichkoff was going to fail;"

[Little v. Lichkoff.]

and in answer to the question as to who first brought word about Sam Lichkoff, and that Mr. Fitts, an attorney, was getting ready to attach him, the witness answered, "Zeibert first brought word." After stating that certain goods were taken from the store of Lichkoff, he was asked if he ever heard of these goods again, and answered, "I heard of these goods after this." Upon his testifying that certain goods were shipped out of the store of Lichkoff, who sent the bill of lading to Birmingham, he further stated, "and they got the goods out of the depot by the bill of lading, but whoever had the bill of lading is something I do not know." This statement was excluded by motion of the plaintiff. Upon the examination of one Webb, who was the depot agent at Tuscaloosa, the defendants asked the said Webb the following question : "What shipments do the books of the railroad show were made to Carbon Hill during October and November, 1890, and up to November 29th?" The plaintiff objected to this question, and the defendants duly excepted to the court's sustaining his objection. The other rulings of the court upon the evidence are sufficiently stated in the opinion.

FITTS & SOMERVILLE, for appellants, assigned twenty-one errors, and filed a lengthy brief citing many authorities in support thereof. These assignments of error related to the alleged erroneous rulings of the trial court upon the admission or exclusion of evidence during the trial.

·G. W. VAN HOOSE, for Appellee.

HARALSON, J—1. The plaintiff in the court below, appellee here, being examined as a witness in his own behalf, was asked by his counsel, to state the total amounts due him by each person indebted to him, at the time of the levy of the attachment on his stock of goods; and, to refresh his memory, he was allowed to examine his ledger as to entries of indebtedness. After an examination of them, he stated, that the entries had been made by him, or by his book-keeper, under his direction, in the usual course of his business as a merchant, and he had personal knowledge of their correctness; and he then stated, as a matter of independent recollection, after being thus refreshed, what amounts were due to him.

Defendant's counsel then asked witness, on cross examination, "If all these entries of the amounts due, to which he had testified, were in fact made as he had stated in his di-

rect examination, and were not some of them made by himself, since the attachment, and since the origin of this suit?"

To this question, the plaintiff objected, because the book had never been offered in evidence, and the same was irrelevant.

The court sustained the objection against the exception of the defendant. This was an erroneous ruling. The witness having refreshed his memory by an examination of the entries in the ledger, and testified to their correctness, the adverse party had the right to cross examine him upon those entries in the book, without making them his evidence in the cause.—1 Gr. Ev., 466; *Stoudenmire v. Harper*, 81 Ala. 242; *Acklen v. Hickman*, 63 Ala. 498.

2. There was no error in allowing the plaintiff, as a witness, to give his opinion of the reasonable market value of the stock of goods, at the time the attachment was sued out and levied. If in what he said, as appears to be the case, their market value at that time, in his judgment, was their cost price, with 33.1-3 per cent. added, it was competent for it to go to the jury in that shape. Possibly, a cross examination would have shown, that the estimate was speculative, but it does not now, so appear. What are termed speculative profits—that is, possible or even probable profits—are too remote, and evidence tending to show such profits is not admissible.—*Pollock v. Gantt*, 69 Ala. 377; *Union Refining Co. v. Barton*, 77 Ala. 148; *Brigham v. Carlisle*, 78 Ala. 248; *Young v. Cureton*, 87 Ala. 727.

3. It was competent for defendant to ask plaintiff, on his cross examination, as a witness in his own behalf, "If Zeibert did not change the labels on a quantity of shoes which he had gotten from plaintiff?" There was evidence tending to show, that plaintiff had used Zeibert to aid him in defrauding his creditors, by making false transfers or sales to him of quantities of goods, shortly before the attachment was levied, and this evidence had some tendency to establish that conspiracy.

4. When W. F. Fitts, witness for plaintiff had testified, that the plaintiff's credit at the bank of J. H. Fitts & Co., of which firm he was a member, was good, before the attachment was sued out, and afterwards, it was lost and destroyed, it was allowable for the defendant to ask him, on his cross examination, "If he had not refused plaintiff credit at his bank, prior to the attachment?" and the refusal of the court to allow the question, was obviously erroneous.

5. The court committed no error in excluding the evidence to which defendant excepted, on which assignments of error

[Little v. Lichkoff.]

numbered 8, 10, 11 and 19 were based.   It was all objection-
able, as being either hearsay, secondary, or *res inter alios.*

6.  The court erred in excluding from the jury on motion of
the plaintiff, the words of the witness, Fielder, for defendant,
viz: "Ziebert first brought word," to plaintiff, "that Fitts
was getting ready to attach him," because, the answer, when
taken with the other evidence, tends to show the alleged
conspiracy between Zeibert and plaintiff, by which the for-
mer was to aid the plaintiff in defrauding his creditors, by
placing his property out of their reach.

Assignments from 12 to 18 inclusive, are without merit
and are not insisted on in argument.

7.  In rebuttal, the plaintiff introduced H. L. Zeibert, as a
witness, who, on his direct examination testified, that he
had bought more or less goods all the year from the plain-
tiff, and large amounts in October and November, 1890, and
had bought them in the usual course of trade, and had paid
for them, the full market price.   There had been evidence
introduced, tending to show, as has been before stated, that
said Zeibert had been used by plaintiff as agent to aid him
in defrauding his creditors, by making a fraudulent disposi
tion of his stock of goods.   On the cross examination of
this witness, the defendant, as is evident, with a view to im-
peach his credibility, asked him, "If he had not told one
Brooks, at his, Zeibert's store, a few days before Lichkoff
was attached, that he had been buying shoes from Lichkoff
at 75c. per pair, that were worth at wholesale, on the market,
$1.25 per pair?" and if, at the same time and place, he did
not tell Brooks, that he could discount his (Brooks') prices,
—Brooks being a shoe dealer,—fifty per cent., and showed
him the shoes he said he had gotten from Lichkoff at 75
cents per pair?

For the purpose for which it was offered,—evidently to
lay a predicate to contradict the witness,—this evidence was
perfectly competent.   It tended to show a contradiction in
the statements of the witness, if answered affirmatively, and
if in the negative, it furnished a predicate to contradict him
with Brooks.

Reversed and remanded.