## CORBIN v. E. TAUSSIG & CO.

## WEST DISINFECTING CO. v. CORBIN.

(Circuit Court, E. D. Pennsylvania. October 7, 1904.)

### Nos. 8, 9.

1. INJUNCTION—USE OF BUSINESS NAME.

A complainant *held* not entitled to an injunction restraining defendant from using a company name adopted for business purposes in Philadelphia, on evidence showing prior use by them in New York, and also that complainant on their demand used such name for a considerable time only in connection with his own as agent.

¶ 1. Use of corporate and firm names, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzkaffee Fabriken v. Medicine Co., 27 C. C. A. 357.

**2. PATENTS—INTERFERENCE WITH RIGHT OF EXCLUSIVE LICENSEE.**

Defendants, who were general agents for a patentee, from whom plaintiff had secured the exclusive right to sell the patented article in Philadelphia and vicinity, to hold good indefinitely, subject, only, to the condition that he use reasonable efforts and energy to push the sale of the goods, subsequently started a branch house of their own in Philadelphia, in which they sold the same article in competition with complainant. They afterwards acquired the ownership of the patent, and undertook to terminate complainant's contract. *Held,* that they were liable to him for the profits realized by them from the sale of the patented article in Philadelphia, and that he was entitled to be restored to his rights under his contract; there being no sufficient evidence that he had failed to perform its conditions.

**3. SAME—SUIT FOR DAMAGES—PARTIES.**

Where, pending a suit to restrain interference with complainant's rights as exclusive licensee under a patent and to recover damages therefor, defendants organized a corporation to which they conveyed their business, complainant is not entitled to relief against the corporation, unless it is brought in and made a party.

**4. UNFAIR COMPETITION—RIGHT TO PROTECTION.**

One who has wrongfully appropriated the business of a licensee under a patent, and prevented him from selling the patented article, has no standing to complain of unfair competition because of his sale of a similar article under a like name.

**5. EQUITY PRACTICE—CROSS-BILLS—AFFIRMATIVE RELIEF.**

Affirmative relief in equity cannot be obtained by defendant against complainant without a cross-bill.

In Equity.   On final hearing.

Edwin O. Michener, for Charles M. Corbin.

James W. Bayard, for E. Taussig & Co. and the West Disinfecting Co.

ARCHBALD, District Judge.*   These are counter bills growing out of the same circumstances, the relation of which to each other will appear as we proceed.   On April 16, 1892, Charles M. Corbin, of Philadelphia, by agreement in writing secured from Robert S. West, of Cleveland, Ohio, who was the inventor and patentee of certain disinfecting appliances and fluids, the sole and exclusive control of the sale of the same for the city of Philadelphia and vicinity.   By its terms the agreement was to "hold good indefinitely," so long as Corbin should "exercise all reasonable efforts and energy to push the sale of the goods and to bring them before the public" in the territory named "by personal solicitation or by means of canvassers," and pay promptly for all goods ordered; the goods to be charged by and payments to be made to E. Taussig & Co., of New York City, who were West's representatives and general agents in the Eastern states.   Having obtained this contract, Corbin started into the business of placing and selling the disinfecting appliances and fluids mentioned, and has continued in the same to the present day.   At first he took in a man named Steven-

¶ 4. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

¶ 5. See Equity, vol. 19, Cent. Dig. § 450.

* Specially assigned.

son, but this only lasted two or three months, until July, 1892. Shortly after Stevenson left Corbin began to advertise and conduct the business under the name of "West's Disinfecting Co., C. M. Corbin, Proprietor and Sole Agent"; this being subsequently changed to "West Disinfecting Co., C. M. Corbin, Agent," and finally to "West Disinfecting Co.," without more, which designation he has continued to use ever since.

It is contended by Corbin that he was the originator of this name, and one of the purposes of his bill is to establish his right to its exclusive use. But the earliest employment of it in this distinctive form for which he is able to satisfactorily vouch is the postal card of April 18, 1893, which is not enough. The claim that this was the sign from the start on the door of the office, 702 Girard Building, cannot be sustained; it being proved by the books of the painters who put it on that no such work was done until June 30, 1893. On the other hand, it is established by documentary evidence, with regard to which there can be no controversy, that the name "West Disinfecting Company" was used by the firm of E. Taussig & Co., in their business as general agents for these disinfectants, at a far earlier day than anything that Corbin can assign. The order slips and inspection reports which have been produced by the former must be accepted as conclusive on this subject, the earliest of which bears date in January, 1892, and all of which have a heading of that kind. Neither can it be contended that the use was intermittent or not persisted in; for although it is true that some of the letters after this from Taussig & Co. to Corbin only employ the firm name, yet "West Disinfecting Company" is unquestionably displayed on others written about the same time, and this is continued down to the date of the present controversy. But, more than this, it is admitted that early in 1894 Taussig & Co. insisted that the circulars and other printed matter which they were furnishing to Corbin along with the goods for use in the business, should be headed "West Disinfecting Company, C. M. Corbin, Agent"; and, however reluctantly this was acceded to or with whatever mental reservation, its outward acceptance was a recognition by Corbin of the right to the use of the name by Taussig & Co., and his own subordinate and representative position, which he is not now in shape to deny. In 1899, since the filing by Corbin of his bill, "The West Disinfecting Company, Incorporated," was organized and the business of Taussig & Co. transferred to it. The right to the name has thus passed to the corporation, which has permanently appropriated it, and it must be sustained therein. This is true both with respect to the use of it in Philadelphia, to which it is sought to narrow, and so possibly save, it, as well as outside of there. I know of no rule by which a definite territory such as that could be segregated from the rest of the business world, and a trade-name, confined to it, be built up. But, assuming it could, by the use of the name by E. Taussig & Co. in their general business, including that which was transacted with Corbin in this territory, and particularly the requirement that in employing the name he should advertise himself as agent, any exclusive right to it on his part, here as much as elsewhere, was effectually cut off.

But an injunction against the use of the name in controversy is not the only relief sought by Corbin in his bill. He complains also of an

invasion of his territory by Taussig & Co. in disregard of his contract, with respect to which he has a different case. In the summer of 1896 that firm bought out the Germicide Company, which had been doing some business in Philadelphia, and established here a branch store for the sale of the same general line of goods that Corbin dealt in. Corbin was notified that they proposed to do this, and was offered the agency under the supervision of Taussig & Co. on a salary, provided he would give up the contract which he had for the West disinfectants; but he declined. It is claimed that at the outstart no goods covered by his contract were sold; but, whether that is so or not, it is not pretended that it was kept up, and the result was that before long Taussig & Co., through their agents, were selling in competition with Corbin the identical disinfectants to which by his contract he had the exclusive right. It is contended that his business was not affected, as shown by his purchases from Taussig & Co., which remained unchanged; and it is true that in 1897, when the competition would be first likely to make itself fully felt, they were practically the same as for the two years previous, while for the first eight months of 1898, until the contract was abrogated, they did not fall off so very much. But it is expected that a business such as this will grow and not be stationary, and it by no means follows, therefore, from this comparison, that Corbin did not suffer by the invasion of his territory. On the contrary, by the loss of customers which he is shown to have suffered, it is proved that he did. Nor did the matter stop there. On August 4, 1898, Emil Taussig, on behalf of his firm, bought out all the interest of West in the disinfecting appliances which he had; and on September 7th following Corbin was notified by E. Taussig & Co. that they would not deliver any more goods under his contract. This action is sought to be justified on the ground that he was not living up to the contract, having failed to push the sale of goods as required thereby. Reasonable diligence was certainly called for on his part, and this is to be determined by results, rather than by personal ability. If Corbin, in other words, did not measure up to the place, he could not expect to hold it. But I am not satisfied that he did not. Complaint is made that he dabbled with other things, being agent for a time for a kidney cure, and setting up a tailoring repair shop, where he made his headquarters and the business of which, as it is said, took considerable of his time.

It is also pointed out that his purchase of disinfectants was very meager, amounting to more in 1893, the second year of his contract, than they have at any time subsequently; and being then but $1,270, and falling to half that in 1894, while for the three years following they were only $1,150 to $1,160. It was stated at the argument that he sold the goods at about six times what he paid for them, and, accepting this rate, his gross yearly sales would not exceed $6,000 or $7,000. This, it must be admitted, does not seem all that could be expected in a city like Philadelphia, but the difficulty is that we have no standard of comparison. With much reluctance it was stated by Taussig on the witness stand that the month before he testified, which was admittedly an exceptionally good one for the season, the business of his company in this city had amounted to $780 or $790; but whether these were wholesale or retail figures (although asserted at

the argument to be the latter), or what the sales were for the whole year, have not been vouchsafed to us. The only other approach to anything definite in the record is the suggestion, in one of the letters from Taussig & Co. to Corbin, that he ought to work up his business to at least $2,000 a year; but, considering that this was intended as a stimulus to effort, it is likely to have been much more than was really expected. Evidently, as was said in another letter, "It is no picnicking selling disinfectants"; the field for them, even in a place like Philadelphia, being much more limited than would at first be supposed. It is shown, however, by Corbin, on the other hand, that he employed from three to five assistants in his business, from which it is claimed that he realized in the neighborhood of $2,800 a year, before it was interfered with. The falling off in 1894 is explained by trouble which was experienced with the disinfectants, which nearly ruined the business; and a recovery from this was hardly had when in 1896 the competition with Taussig & Co. was encountered. In that very year, moreover, when that firm contemplated establishing in Philadelphia the branch which they set up there, covering not only the West goods but others of their own manufacture, they offered to put Corbin in charge of it on a salary, with an added interest in the business, which they hardly would have done if they were not reasonably satisfied with his previous efforts.

But what seems conclusive on the subject, in the letters of September 7 and 8, 1898, announcing that they would fill no further orders, no such reason for terminating the contract was given as is now suggested. The charge simply was that Corbin had acted dishonorably and objectionably, evidently referring to what had been done in the existing controversy between them, growing out of Taussig & Co. having come to Philadelphia and selling the West disinfectants there. As there had been not infrequent complaints in the preceding correspondence as to the small amount of business being done by Corbin, if they honestly believed that they had the right to annul the contract on this ground, and this was the real reason for doing so, it is somewhat remarkable that no mention of it should be made. To advance it now has too much the appearance of an afterthought, to try and bolster up what they had done. But, however that may be, considering that the burden is upon them to justify their action, it is not met by the showing that has been made. All that was required of Corbin was the exercise of reasonable effort and energy to push the sale of the goods and bring them before the public in the territory assigned to him, and this he has apparently done. It may be that others could do more, but this we can only surmise. The lack of proper effort certainly has not been established, as it should be, by a preponderance of proof.

So far, then, as the bill by Corbin proceeds for the vindication of his contract and the recovery of what he has lost by the infringement of his rights under it, it must be sustained. This does not apply to the West Disinfecting Company, Incorporated, however, which has not been made a party to the bill. Although it was not in existence at the time the suit was instituted, it should have been brought in when the business of Taussig & Co. was assumed, if there was any intention to hold it liable therefor. Neither can affirmative relief be obtained against it in the suit where it is complainant, no cross-bill having been

filed. But as to Taussig & Co., having deliberately come into the territory where Corbin by contract with the inventor and patentee—their principal—had exclusive rights, selling the patented articles and appliances, and diverting his customers and trade, they must at least answer for such profits as were unlawfully obtained by them therefrom. Not being immediate parties to the contract, and having assigned the interest which they secured by their purchase from West, it may be that specific performance could not be enforced. But it was stated at the argument that this would not be insisted on by Corbin, provided he was protected in his business, and it is not necessary, therefore, to dwell upon this phase of the case. While, then, not all the relief which is asked for in the bill can be granted, to the extent indicated in the views which have been expressed it must be sustained.

But little need be said with regard to the bill filed by the West Disinfecting Company, Incorporated. The right to the use of that name has been disposed of in what has been already said. Not only is that its corporate title, which does not, perhaps, matter much, but succeeding, as it has, to the business of Taussig & Co., who were the first to appropriate it, the right of the company to employ it, in Philadelphia as well as elsewhere, is conclusively established.

The complaint that Corbin has been selling a disinfecting compound, which he calls "chloro-naptholene," in imitation of and unfair competition with "chloro-naptholeum," the fluid manufactured under the West patents, would require notice, except for the fact that he was authorized, as we have seen, to sell the latter, and was prevented from so doing by the refusal of Taussig & Co., and the West Disinfecting Company as their successors, to supply him therewith. Under the circumstances, the attempt to retain his trade by furnishing his customers with something similar in character and name cannot be regarded as an unfair expedient, so far as the complainants are concerned, whatever may be said of it with respect to those who dealt with him. But under the decree which will be made in his behalf, re-establishing his contract, the necessity for any such deception will be removed, and we may properly leave it there.

Summing up the results of this discussion, I reach the conclusion that on the bill by Corbin against E. Taussig & Co. a decree should be entered restoring his contract and affirming his exclusive right thereunder to make sale of the disinfecting fluids and appliances to which it relates in the city of Philadelphia and for a radius of 25 miles about there, and referring the case to a master to take an account of the profits unlawfully diverted from him, in disregard thereof, with costs; specific performance of the contract, however, and an injunction against the use of the name "West Disinfecting Company," being refused. And on the bill by the West Disinfecting Company, Incorporated, that an injunction should be allowed restraining the use by Corbin of that name, but be refused as to the sale of goods under the designation of chloro-naptholeum, without costs.