MAURICE F. WILLIAMS *vs.* ROBERT M. WOOD.

Argued Nov. 2, 1893.　Reversed in part Nov. 27, 1893.

No. 8541.

**Verdict supported by the evidence.**

Upon an examination of the evidence produced upon the trial of this action, it is *held* that it was sufficient to justify the jury in finding that it was agreed between plantiff and defendant that a certain balance due from the former to the latter on account of a sale of land was to be applied upon the notes given to secure the chattel mortgage herein involved, and not upon other notes held by plaintiff against defendant.

**Evidence considered.**

*Held*, further, that plaintiff failed upon the trial to show default in, or a breach of, a condition of the mortgage whereby the defendant mortgagor had contracted and covenanted to pay over to the mortgagee one-half of the earnings of the mortgaged property by him collected in cash.

**Anticipated profits cannot be recovered as damages.**

*Held*, also, that the trial court erred in its rulings upon the admission of evidence, and in its charge to the jury in respect to the compensation defendant was entitled to by reason of an unlawful taking of the property in question by plaintiff.

Appeal by plaintiff, Morris F. Williams, from an order of the District Court of Clay County, *Frank Ives*, J., made March 16, 1893, denying his motion for a new trial.

*John E. Greene* and *W. E. Purcell*, for appellant.

*C. A. Nye*, for respondent.

COLLINS. J.　Action in claim and delivery to recover possession, or the value in case possession could not be had, of an outfit for threshing grain by steam power.　The plaintiff claimed to be entitled to possession because of default in the conditions of a mortgage upon the property and upon one-half of the gross earnings thereof, executed and delivered by defendant and another person to secure the purchase price of the same, as evidenced by certain promissory notes, which mortgage and notes had been duly transferred and assigned by the original mortgagee and payee to plaintiff.　The latter secured possession of the property at the com-

mencement of the action, and retained it at the time of the trial. In his answer defendant alleged payment of the notes in full, with interest, prior to the bringing of the action. Further answering, he set forth the taking of the property in question by the plaintiff in these proceedings in claim and delivery; and, further, that it had been detained by plaintiff from the time of the taking until the end of the threshing season for that year,—1892. It was then alleged that "the value of the use" of the outfit during said period of detention was a stated sum per day, whereby defendant had been damaged in a certain amount, for which judgment was demanded. These averments were put in issue by the reply.

On the trial it appeared that three notes, each of date August 25, 1891, were secured by the mortgage. One, for $950, matured November 1, 1891, some 10 months prior to the commencement of this action; another, for the same amount, was to mature November 1, 1892, a few weeks subsequent to bringing of the action; while the third, for $475, did not fall due until November 1, 1893. It will thus be seen that no default in payment as to the notes to mature in 1892 and 1893 had accrued when plaintiff brought his action.

The mortgage was in the usual form, except that it contained a stipulation to the effect that, should the mortgagors refuse or neglect to pay over to the mortgagee, without demand therefor, as fast as collected in cash, one-half of the earnings of the property, whether the notes were due or not, or if the mortgagors should use the earnings for any purpose other than the payment of actual expenses incurred in the work or of the debt secured, then all of the notes, both principal and interest, should, and without notice, become due and payable at once, and the mortgaged property might be seized for the purpose of foreclosure.

It was admitted that in the fall of 1892 defendant threshed a large quantity of grain belonging to plaintiff, for which he was to have credit on one of his notes. There was some dispute about the amount due for this, but, on the argument here, counsel for plaintiff concedes defendant's figures,—$319. Later, in March, 1892, defendant sold to plaintiff 320 acres of land, at an agreed price of $13 per acre,—a total of $4,160. This land had been purchased from the state, and a small part only of the price had been

paid. Certificates had been issued by the authorities, but these were in the hands of a third party as security for a debt due from defendant. It was agreed that plaintiff should pay the debt, and obtain the certificates; should also pay the amount due to the state as the balance of the purchase price; and should also pay certain taxes due upon the land. This was done, and thereupon the account growing out of the land transaction stood thus: Agreed price of the land, $4,160. Plaintiff had paid thereon, to obtain the certificates, $593.75; as taxes on the land, $37; as balance due to the state, principal and interest, $1,700,—an aggregate of $2,330.75, as of date March 28, 1892. The balance due from plaintiff on the land was $1,829.25. To this should be added the amount of defendant's bill for threshing plaintiff's grain,—$319; the total sum being $2,148.25. At the date before mentioned, March 28, 1892, the principal of the secured notes was $2,375; accrued interest, $140.50, —total $2,515.50. If, then, the balance due to defendant on the land trade was, as he claims, to be applied upon the notes secured by the chattel mortgage, there remained unpaid upon these notes at the date last aforesaid a balance of $367.25, no part of which was due, unless defendant had made default, or had violated some of the conditions of the mortgage, as plaintiff claims he had. Reference to this claim will be made hereafter.

We have stated defendant's position as to the balance due to him upon the land deal,—that it was to be applied on the secured notes. The plaintiff contended upon the trial, however, that this was not the fact. He held other notes and demands against the defendant, and claimed that there was no agreement to apply the balance on any particular note or demand, but simply that it was to be applied on defendant's indebtedness. Insisting upon his right to apply it as he chose, in the absence of an agreement or a designation by defendant, the plaintiff had applied this balance— First, in full satisfaction of other notes held by him against the defendant and other persons; and, second, in part payment of the secured note which fell due November 1, 1891.

There was a square issue, on the evidence, between the parties, as to whether there was an agreement in respect to the application of the balance due to defendant upon the sale of his land. He testified plainly and positively that there was; that he sold the land to pay the

notes secured by the chattel mortgage; and that plaintiff agreed to apply the balance in satisfaction of those notes. To arrive at the verdict rendered in this action, the jury must have accepted and believed the defendant's version of the contract, and they were abundantly justified in so doing; so that we accept the verdict as conclusively settling this issue of fact, and as forever determining that the amount for which defendant sold his land, less the sums which plaintiff was to pay and did pay to third parties, was to be and must be allowed and credited to defendant upon the notes secured by the mortgage. This, with the amount due upon the threshing bill, wiped out his indebtedness upon the first two notes of the series, and left unpaid as of March 28, 1892, and as a balance yet to be paid on the note maturing in 1893, $367.25, as before stated. Our figures do not agree with those made by either of the counsel, but we regard them as correct, and those only which are fully justified by the testimony.

As the balance of the third of the series of notes did not fall due, according to its terms, until the fall of 1893, it is obvious that, simply because there remained an amount unpaid, the plaintiff had no right to immediate possession, or to bring this action in September, 1892. Unless some other condition of the mortgage had been broken, this proceeding was premature.

It was conceded on the trial that plaintiff took the notes subject to all equities or defenses which would have availed the defendant had they remained in the hands of the original payee. The defendant was permitted, the plaintiff duly excepting, to show that he did not receive certain articles which he had bought with and as part of the outfit, of the value of $60, and that, by agreement, he returned to plaintiff a self-feeder, of the value of $175, which had been included in the amount for which the notes were given. There was no allegation in the answer under which this evidence could properly be received. But the court corrected its error when admitting proof on this point, in its charge to the jury, by stating that neither of these items could be considered as payments upon the notes, or as a defense to the action.

It was contended by the plaintiff on the trial that defendant had defaulted in the condition found in the mortgage making it his duty, without demand being made upon him, to pay over to

plaintiff one-half of the earnings of the threshing machine as fast as collected in cash. Of course, it was incumbent upon the plaintiff to establish this default by a preponderance of evidence. He testified that none of the earnings had been paid to him, but, aside from this, the only testimony bearing upon the point was that of a man who ran the machine about six weeks just before the commencement of this action. His testimony was exceedingly meager, and to the effect that defendant had the net proceeds of the work done, a stated sum per day; that is, said the witness, the proceeds "went to his benefit." This did not prove that defendant had collected any of the earnings in cash. If plaintiff expected to rely upon a breach of this special condition in the mortgage, he should have shown this breach by competent proof, and not left it to be surmised or conjectured from the scant statement of a witness that the net earnings for a period of time "went" to defendant's benefit. Again, it will be noted that defendant threshed the grain upon plaintiff's farm, thus earning over $300, all of which remained in the hands of the latter, and must be considered when determining the question of a breach of this particular condition. In fact, the court charged the jury, in effect, no exception being taken, that this condition in the mortgage could only be regarded should they find that defendant had collected in cash and from other persons a greater sum than the amount of the threshing bill due from plaintiff.

The plaintiff failed to show any default or breach in this particular condition, and therefore had no cause of action arising from such default or breach. Taking this in connection with the fact that, upon completion of the land trade, defendant was no longer in default, but had anticipated his payments, it follows that, when instituting this action, plaintiff was not entitled to possession of the mortgaged property.

A single point remains for consideration, and that relates to the matter of damages. The jury found that, by reason of the unlawful detention, the defendant had sustained damages in the sum of $375. But we are obliged to say that the court erred in its rulings on the admission of testimony, and also in its charge to the jury. The defendant was permitted to state the amount of his damages upon the basis referred to and commented upon in *Cushing* v. *Seymour,*

30 Minn. 301, (15 N. W. Rep. 249;) that is, he estimated the value of the use of the property to him by taking into consideration certain contracts which he had made for threshing, and which he could not perform after the machinery was taken away. These were clearly anticipated profits, and too conjectural and uncertain to furnish a proper basis for estimating compensation to defendant; and it is apparent that the same element entered into nearly all of the estimates made by defendant's witnesses. And, in charging the jury as to the measure of damages, the court really permitted these anticipated profits to be considered, although it attempted to confine the jury to the reasonable value of the use of the property. To illustrate, it refused to distinctly charge, as requested by plaintiff's counsel, that profits which might have been made had defendant performed particular contracts which he had when the outfit was taken were too conjectural and uncertain to furnish a proper basis for an award of damages to defendant. This request should have been given without the slightest modification. *Cushing* v. *Seymour, supra*.

We are satisfied that upon every other point in the case substantial justice has been done, and that a retrial of all issues is unnecessary. The order appealed from is reversed in so far as to allow a new trial, for the sole purpose of assessing the amount of compensation to which defendant is entitled for the detention of the property by plaintiff.