F. M. RUSSELL ET AL. V. HORN, BRANNEN & FORSYTH MANUFACTURING COMPANY.

FILED JUNE 26, 1894.    No. 5183.

1. **Principal and Agent:** AGENT'S EXCLUSIVE RIGHT TO SELL GOODS: BREACH OF CONTRACT: DAMAGES. R. & P. claimed to have a contract with the H. Company whereby H. & P. were to have the exclusive right to sell goods manufactured by the H. Company in certain territory and whereby the H. Company was forbidden to sell these goods to others within that territory. At the request of R. & P., a salesman of the H. Company made an estimate to a third person of the price of certain goods, the evidence tending to show that the salesman was introduced to such third person by R. & P. with the statement that anything he did would be satisfactory to R. & P. The salesman sold the goods directly to such third person for the H. Company and not for R. & P. R. & P. sought to recover from the H. Company for profits lost because of such transaction. The H. Company claimed that R. & P. had waived their exclusive right in this instance. The court instructed the jury, in effect, that if R. & P. introduced the salesman to such third person with the statement that any agreement he made would be satisfactory, and if the third person did not then understand that he was to procure the goods from R. & P., then such facts constituted a waiver. *Held*, Erroneous, because in an action between R. & P. and the H. Company the purchaser's understanding was im-

material, and it was for the jury to determine from all the evidence whether or not there had been a waiver, this instruction substituting the judgment of the purchaser for that of the jury upon this point.

2. ———: ———: ———: ———. There also being a claim for damages because of alleged sales by the H. Company to others within R. & P.'s territory in violation of the contract, *held*, that the measure of damages because of such sales was the profit which R. & P. might with reasonable certainty show that they were prevented from realizing by reason of the breach of contract.

3. ———: ———: ———: ———. A third claim of damages was based upon the alleged failure of the H. Company to deliver to R. & P. goods which they had contracted to sell and deliver. *Held*, That on this cause of action R. & P.'s measure of damages was the difference between the price at which the H. Company had agreed to deliver the goods and the market value of such goods at the time and place when and where they should have been delivered.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*Kennedy & Learned*, for plaintiffs in error.

*Breckenridge, Breckenridge & Crofoot, contra.*

IRVINE, C.

The Horn, Brannen & Forsyth Manufacturing Company, hereinafter called the "Horn Company," brought an action in the district court of Douglas county to recover from F. M. Russell and Orlo H. Pratt, copartners doing business as Russell, Pratt & Co., and hereinafter referred to as "Russell & Pratt," $1,285.22, with interest, alleged to be due the Horn Company as a balance for goods sold and delivered to Russell & Pratt. The account attached to the petition showed charges against Russell & Pratt amounting to $4,562.93, and credits amounting to $3,277.71. Russell & Pratt answered, admitting payments to the Horn Company of large sums of money for gas fixtures and mer-

chandise sold and delivered to Russell & Pratt, but denying indebtedness in any amount, and further denying every allegation of the petition not expressly admitted. The answer then set up three counter-claims, the first being for $1,086.65, as commission and profits to which Russell & Pratt were entitled on the sale of certain gas and electrical fixtures to one Hendrix, it being charged that the list price of said fixtures was $1,898.10, and that under the contract existing between the parties Russell & Pratt were entitled, as their profit on said transaction, to fifty, ten, and five per cent off said list price. The second counter-claim charged that on March 1, 1889, an agreement was entered into between the Horn Company and Russell & Pratt whereby the Horn Company agreed to give Russell & Pratt the exclusive agency for its wares for the state of Nebraska and certain other territory, and agreed not to sell any of its fixtures to or through any other person within the territory mentioned save to Russell & Pratt; that the agreement was to remain in force for one year; that the Horn Company, in violation of its agreement, sold to and through other persons in the city of Omaha, and elsewhere in the territory mentioned, fixtures and merchandise covered by the agreement, whereby Russell & Pratt were deprived of large profits and were unable to dispose of a large quantity of merchandise purchased from the Horn Company in reliance upon such agreement, wherefore damages were prayed in the sum of $1,200. The third counter-claim alleged that on May 13, 1890, they ordered from the Horn Company merchandise at the agreed price of $648.50, which order was accepted by the Horn Company, and which the Horn Company agreed to fill, but subsequently refused to fulfill, to Russell & Pratt's damage in the sum of $373.74. The reply was a general denial. There was a trial to a jury and a verdict and judgment for the Horn Company for $922.17, from which Russell & Pratt prosecute error.

Certain rulings of the court on the admission and rejec-

tion of evidence are discussed in the briefs, but cannot be considered, for the reason that the assignments of error do not point out the rulings complained of.

Upon the subject of the first counter-claim, the sale of goods to Hendrix, the evidence tended to show that Hendrix was erecting a number of houses and that Russell & Pratt had made, or caused to be made, two bids for furnishing gas fixtures therefor. These bids contemplated the use of fixtures other than those of the Horn Company's manufacture. Mr. Ryan, a traveling salesman of the Horn Company, appeared in Omaha. At the request of Russell & Pratt, he went with Mr. Russell to Balfe & Read, who were gas fitters in Omaha, was introduced to a member of that firm by Russell and made for Balfe & Read an estimate for the fixtures for the Hendrix houses. The bid formulated by Balfe & Read upon that estimate was accepted by Hendrix and the goods sold directly without the further intervention of Russell & Pratt. Russell & Pratt claim that it was the agreement between them and the Horn Company that the Horn Company's salesman should assist them when desired in making sales; that Ryan acted ostensibly for that purpose; that it was the understanding with Ryan that while he should make the estimate, the sale was to be to Balfe & Read on behalf of Russell & Pratt, not a direct sale by the Horn Company; that Russell & Pratt would be entitled under their agreement to purchase the goods at a discount of $1,086.65 from the list price, and that in violation of their contract with the Horn Company they were deprived of this sum by reason of Ryan's making the sale directly. There was evidence tending to establish this contention. The Horn Company claims that it was the voluntary proposition of Russell & Pratt that Ryan should make the estimate and the sale, and that Russell & Pratt had in this instance waived their right of insisting that the Horn Company should sell no goods except through them. This contention is also not

without some support in the evidence. Upon this subject the court, at the Horn Company's request, instructed the jury as follows: "You are instructed that even if you believe from the evidence that Russell, Pratt & Co. had, at or about the time the contract for furnishing gas fixtures for the Hendrix houses was entered into, an exclusive agency for the sale of the plaintiff's goods in the city of Omaha; that if you further believe from the testimony that they, defendants, introduced the plaintiff's salesman, Ryan, to Messrs. Balfe & Read and stated to Balfe & Read that any agreement Ryan made would be satisfactory to them, and that there was no understanding on the part of Balfe & Read at that time that they were to procure the goods ordered through Ryan from Russell, Pratt & Co., such action and statements constitute a waiver on the part of Russell, Pratt & Co. of their exclusive agency, if any existed, and they are not entitled to recover from the plaintiff any damages under the first counter-claim set up in the answer." We think in giving this instruction the learned judge erred. It will be observed that it stated that if Russell & Pratt introduced Ryan to Balfe & Read, and stated to them that any arrangement Ryan made would be satisfactory to Russell & Pratt, and that Balfe & Read did not then understand that they were to procure the goods from Russell & Pratt, then that these facts constituted a waiver by Russell & Pratt of their exclusive right. This would be a correct statement if this were a proceeding against Balfe & Read. If Balfe & Read did not understand that their purchase was to be from Russell & Pratt, and if Russell & Pratt informed them that any arrangement they made with Ryan would be satisfactory, and Balfe & Read had acted upon that statement, Russell & Pratt would be estopped, as against them, from claiming anything to the contrary. But this case does not affect Balfe & Read at all, and such an estoppel would not operate in favor of the Horn Company.

If the understanding was, as Russell & Pratt claimed, that Ryan should make the estimate to Balfe & Read on behalf of Russell & Pratt, then it was immaterial what Balfe & Read understood, and there would in such case be no waiver. The statement claimed to have been made by Russell to Balfe & Read, that Russell & Pratt would be satisfied with any arrangement that Ryan made, is susceptible of two constructions, according as the other evidence in the case may be viewed. It might mean that Russell & Pratt were willing to allow Ryan to sell directly for the Horn Company, or it might mean merely that Russell & Pratt authorized Ryan to make any arrangements he saw fit for them, and that Russell & Pratt would supply the goods according to any contract as to prices or terms which Ryan might make. It was for the jury in this case to determine the nature of the transaction and decide this question. This instruction left it to be determined by Balfe & Read's judgment, or more accurately by the jury's determination of what Balfe & Read's understanding of what Ryan's authority might be. It must not be understood from the foregoing discussion that the court is committing itself to Russell & Pratt's contention that their measure of damages on account of this transaction would be the discount from the list price to which Russell & Pratt were entitled. There is some evidence tending to show that Russell & Pratt were under obligations to sell at the list prices, but their measure of damages would be the amount of profit which they would have made had the sale been through them. It was clearly not contemplated that this sale should be at list prices, otherwise there was no occasion for calling into activity the discretionary authority of Ryan to make an estimate. There can be no doubt that Ryan was authorized to fix the price at which the goods were to be sold to Balfe & Read, and if the facts in relation to this counter-claim should be determined in favor of Russell & Pratt, the measure of damages would be the

difference between the price at which, under their contract, Russell & Pratt were entitled to buy the goods from the Horn Company and the price at which Ryan agreed to sell them to Balfe & Read. We think the court correctly refused an instruction asked by Russell & Pratt stating a different rule.

Complaint is made of the eighth instruction given by the court at the request of the Horn Company. It is as follows: "You are instructed that before the defendants are entitled to recover any damages under their second counter-claim, they must first prove that the plaintiff has sold his goods within the defendants' territory between the date of March 1, 1889, and March 1, 1890, and the amount which the defendants would be entitled to recover would be the profit which the plaintiff made by selling to outside dealers over what it would have realized had it sold to Russell, Pratt & Co., unless you further find that the defendants have suffered actual pecuniary loss by reason of the plaintiff's so selling its goods; and if you find the defendants have suffered such loss, then the measure of damages is such an amount as the defendants have proven by a clear preponderance of the evidence they lost in profits on the sale of plaintiff's goods, which they can show with reasonable certainty they would have made had the plaintiff not sold any of its goods within the defendants' territory." We do not think that Russell & Pratt were prejudiced by this instruction. We agree with them that where one person has by contract the exclusive right to buy from another and resell within a certain territory goods in which such other person enjoys a monopoly, and such other person, in violation of his contract, sells such goods to other persons within the territory, the measure of damages is the profit which such first person may with reasonable certainty show that he would have realized if the contract had been performed by the other party. (*Mueller v. Bethesda Mineral Spring Co.*, 50 N. W. Rep. [Mich.], 319; *Hale v. Hess*, 30 Neb., 42.)

The difficulty in such case is always to establish with legal certainty the amount of such profits, but if proper proof be made, the law permits such recovery. (*Anvil Mining Co. v. Humble*, 14 Sup. Ct. Rep., 876.) The instruction quoted states this rule to the jury, and the fact that it also states that Russell & Pratt might recover whatever the Horn Company realized by selling the goods to others over and above what it would have realized by selling to Russell & Pratt does not prejudice them. It was an extension and not a restriction of the rule of damages.

Upon the subject of Russell & Pratt's measure of damages upon the third counter-claim the following instruction was given at the Horn Company's request: "You are instructed that under their third counter-claim the defendants are only entitled to recover as damages the difference between the agreed price of the goods purchased of the plaintiff and their market value at the time the plaintiff refused to deliver them, and the defendants must prove that market value, which would be the amount Russell, Pratt & Co. and other like dealers would have to pay the plaintiff for such goods at the time of the refusal to ship them." The measure of damages upon this counter-claim would be the difference between the price at which the Horn Company had agreed to sell the goods to Russell & Pratt and the market value of such goods at the time and place when and where they should have been delivered. There was evidence tending to establish both of these facts. The failure in this instruction to state the place where the market price was to be fixed was probably cured by another instruction, but the definition given of market value in this instruction was erroneous. There was evidence tending to show that such fixtures as those ordered were purchasable in Omaha at the time of the alleged breach of contract at a discount of twenty per cent from the list price. This instruction practically excluded such evidence from consideration. The market value at

Omaha was the price at which the goods were obtainable there without regard to the person from whom they were to be obtained.    It was not the amount that Russell & Pratt or any one else would have to pay to the plaintiff, and the jury should not have been restricted to a consideration of the plaintiff's prices.

There were many other assignments of error, but upon consideration we find that in respect to them the action of the trial court was substantially correct, and the conclusions reached upon the instructions referred to render a further discussion of the record unnecessary.

REVERSED AND REMANDED.