CORBIN v. TAUSSIG et al.

(Circuit Court, E. D. Pennsylvania. April 1, 1905.)

No. 8.

1. EQUITY—DAMAGES FOR TORTIOUS ACTS—BENEFITS DERIVED BY WRONGDOER.

A court of equity has no inherent power to ascertain the damages sustained by reason of tortious acts, unattended with profits to the wrongdoer. It required an act of Parliament (Acts 22 & 23 Vict. c. 27) to change this in England; and the only modification to be found in the federal law is with respect to the infringement of patents, which has been effected by direct act of Congress. Rev. St. § 4921 [U. S. Comp. St. 1901, p. 3395].

2. EXCLUSIVE AGENCY—SALE OF MANUFACTURED ARTICLES—RELIEF IN EQUITY—BENEFITS DERIVED—DAMAGES.

Where, therefore, a party has the exclusive agency for the sale of articles manufactured by another, within certain territory, while a third party who invades such territory may be made by injunction to respect the contract, and at law might be subjected to an action for damages, to be measured by the profits derived from sales made in such exclusive territory in disregard of the agent's rights, yet a recovery in equity is limited to the damages or benefits derived by the offending party from sales so made.

3. SAME—EXPENSES OF MAKING SALES—APPORTIONMENT OF, IN MIXED BUSINESS.

In such a case, in order to determine the profits derived from sales made, the offending party is entitled to offset the legitimate expenses incurred in making them; and, the articles sold having formed a part of the general business· in which he is engaged and no separate account having been kept by which to determine just what is chargeable thereto, the only thing left to do is to apportion the expenses among the different commodities dealt in, according to the gross sales of each. If this does not produce a just result, it is incumbent upon the party complaining to show it.

4. CONTRACT—CONSTRUCTION—EXCLUSIVE AGENCY FOR DISINFECTING APPLIANCES—WHAT GOVERNED BY.

Semble, where an agency was created for the sale of so-called disinfectors and a certain named disinfecting fluid, of which the other contracting party was the patentee and manufacturer, and the plaintiff was not only to have the exclusive right to make sales thereof, but of all appliances connected with the same, patented and manufactured by such patentee, this was broad enough to include a disinfectant, substituted for the first one, which did not work, coming from the same source and designed to accomplish the same end, although given a different name and not of the same composition, nor altogether the same in effect or manner of use, particularly where the parties, in their transactions with each other, had treated the one as taking the place of the other.

In Equity. On exceptions to master's report.

E. O. Michener, for complainant.

J. W. Bayard, for defendants.

ARCHBALD, District Judge.[1]  It was established by the former opinion in this case (C. C. 132 Fed. 662) that the complainant had the right under his contract to the exclusive agency in Philadelphia for the sale of West disinfectants, and that the defendants had unlawfully intruded thereon. If, therefore, this were an action at law for the recovery of damages, he would be undoubtedly entitled to the loss sustained by him thereby. And the business being an established one, this loss would be measured by the profits which he would have derived from the sales made by the defendants in his exclusive territory in disregard of his rights, these profits being ascertained by the difference between the cost of the disinfectants to him and the price at which he retailed them again, subject to deductions for the expense of doing so as determined by the experience of the business. Lazier Gas Engine Co. v. Du Bois (C. C. A.) 130 Fed. 834; Russell v. Horn, 41 Neb. 567, 59 N. W. 901; Hall v. Stewart, 58 Iowa, 681, 12 N. W. 741; Ramsey v. Holmes Elect. Protec. Co., 85 Wis. 174, 55 N. W. 391; Mueller v. Bethseda Spring Co., 88 Mich. 390, 50 N. W. 319; Oliver v. Hanford, 92 Mich. 304, 52 N. W. 609; Peltz v. Eichele, 62 Mo. 171; Kenney v. Knight (C. C.) 127 Fed. 403; Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45, 20 Atl. 937; Cincinnati Gas Co. v. Western Siemans Co., 152 U. S. 200, 14 Sup. Ct. 523, 38 L. Ed. 411; Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814. But the difficulty of applying that doctrine here is that the defendants were not parties to the contract with the complainant, and, while they

. [1] Specially assigned.

can be made to respect it, the measure of relief beyond this accorded in equity, under the circumstances, extends merely to the advantages or benefits which they have derived from sales made in disregard of it. As said in Kerr on Injunctions, p. 39, a court of chancery has no inherent power to ascertain the amount of damages sustained by reason of tortious acts unattended with profits to the wrongdoer; and that is the situation here. It required an act of Parliament to change this in England (Acts 22 & 23 Victoria, c. 27; De Vitre v. Betts L. R. 6 Eng. & Ir. App. 319); and, however it may be in the different states in this country, the only modification to be found in the federal law is with respect to the infringement of patents, effected by direct act of Congress (Rev. St. § 4921 [U. S. Comp. St. 1901, p. 3395]; Livingston v. Woodworth, 15 How. 559, 14 L. Ed. 809; Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Root v. Railway, 105 U. S. 189, 26 L. Ed. 975).

Judged by this, no exception can be taken to the course pursued by the master in the accounting before him. As against the sales made by the defendants, in order to determine the profits which they had derived, they were entitled to offset the legitimate expenses incurred in making them; and, the disinfectants in question having merely formed a part of the general business in which they were engaged, and no separate account having been kept by which to determine just what was chargeable thereto, the only thing left to do was to apportion the expenses among the different commodities dealt in, according to the gross sales of each, as was done. Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566; The Tremolo Patent, 23 Wall. 518, 23 L. Ed. 97. If this did not produce a just result, it was incumbent on the complainant to show it, which, except by way of argument, there has been no attempt to do. It is true that, as carried on by the complainant, the disinfectant business was apparently a profitable one. The small amount of sales also, which are reported by the defendants, and the show of loss which they make, are in marked contrast with their former contention that the complainant did not push the business as he ought, on which ground they claimed the right to terminate the agency. Neither do they comport with the manifest desire displayed by the defendants to shoulder him out of the business, and get it into their own hands. But, however this may be, there is nothing tangible in it by which to affect the result. We cannot say, for instance, that the defendants' sales must have been more extensive than they admit, or that, rightly managed, there was a decided and definite profit in them. The question is what they actually did and made, and not what they might or ought to have done; and for this, as the case stands, we have nothing but the figures which they have furnished, which—whatever doubt may be thrown upon them—there is not enough to discredit, much less is there anything to lay hold of to make up a different account.

In view of the conclusion which is so reached, it is not necessary to decide whether, as held by the master, the defendants were only liable for the original or crude chloronaptholeum, so-called, or whether they should account for euchrelyptum, sometimes spoken

of as extra refined chloronaptholeum as well. These names are merely fanciful, and, however effective in disposing of the goods, afford no guide. I have to confess, however, and I trust it is not inappropriate to say, that the master seems to have put too narrow a construction upon the complainant's contract on which the question depends, and that, in my judgment, it extends to both these fluids. It is true that they differ in composition, and are not altogether the same in effect or manner of use. But not only was the one brought forward by the inventor as an equipment for his patent disinfectors in substitution for the other on complaint that it did not work, and was thereafter treated in the transactions between the parties as taking its place, thus furnishing a construction of the contract to which the defendants are committed, but by the express terms of that instrument the complainant was to have not only the exclusive sales of West disinfectors, and the disinfecting fluid known as chloronaptholeum, but of "all appliances connected with the sale of same patented and manufactured by said" West as well; a provision which is broad enough to include another and different disinfectant, such as the one in question, coming from the same source, and designed to accomplish practically the same end. Without enlarging upon this, however, it is not material, as already stated; for although the master rejected an offer to prove the sales of chloronaptholeum, which apparently threw them out of the case, they were in fact shown in the statement taken from the books of the defendants, which was put in evidence; and when he came to make up his report he took them into consideration in the alternative account which he stated, and by this it is found that, whether the defendants be charged with the sales of the one or the other disinfectant, they derived nothing whatever therefrom, the result in either case being a loss.

The exceptions are overruled, and the report of the master is confirmed.