CAREY EMERSON and Another v. PACIFIC COAST & NORWAY PACKING COMPANY.[1]

September 22, 1905.

Nos. 14,359—(145).

**Contract.**

A written contract, signed by both parties, whereby defendant appointed plaintiffs its executive agents for a definite term to sell eighty-five per cent. of its pack of fish, at an agreed commission, and plaintiffs obligated themselves to use their best efforts to sell such pack, in pursuance of which plaintiffs in fact performed services and incurred expenses in introducing and vending such pack, is not invalid for want of mutuality of obligation. An action for damages will lie upon breach of that contract without cause.

**Damages.**

The damages recoverable upon such breach are not merely discretionary with the jury. They include such loss of profits, past and future, as are shown by the evidence to have proximately resulted from a breach of the contract, excluding from the award all uncertain and conjectural profits.

**Evidence.**

Evidence of sales made subsequently to breach and during the pendency of the contract term, although made by the principal through other agents than the plaintiffs, is admissible in evidence, and under proper direction by the court may be weighed by the jury in estimating prevented gains.

[1] Reported in 104 N. W. 573.

96 M.—1

Action in the district court for Hennepin county to recover $6,849.33 damages, including loss of prospective profits, for breach of a contract by which plaintiffs were appointed for a definite term exclusive agents. to sell the product of defendant upon commission. The case was tried before Willard R. Cray, J., and a jury, which rendered a verdict in favor of plaintiffs for $3,000. From an order, Simpson, J., denying a motion for a new trial, defendant appealed. Affirmed.

*Gjertsen, Rand & Lund, John Lind,* and *A. Ueland,* for appellant. *Welch, Hayne & Hubachek,* for respondents.

JAGGARD, J.

The plaintiffs and respondents were brokers in groceries, operating between the producers or manufacturers and the wholesale grocers. They had offices at various places, in this state and elsewhere, from which they sold goods, both by personal solicitation and correspondence. The defendant and appellant, a Minnesota corporation, with its principal office in Minneapolis, had just engaged in the business of catching and packing fish, especially salmon, on the coast of Alaska, and shipping the same into the United States to be sold. This. product was handled exclusively by the grocery trade. The packers sold to the wholesale grocers solely, through the medium of brokers, in advance of the catch and subject to pack. According to the contention of the plaintiffs, they entered into a written contract with the defendant whereby they were constituted its sole agents for the sale of at least eighty-five per cent. of its entire pack of fish of all kinds, upon a brokerage of five per cent. for a period of two years, at a selling price to be agreed upon between the parties. Thereafter plaintiffs designed labels, advertised the merchandise, and proceeded with the execution of the contract. At the end of the first year of defendant's experience, the plaintiffs had sold a considerable quantity of fish, but not the entire pack. Thereupon the defendant repudiated the contract, and before the end of another year sold a large quantity of fish through a broker in Chicago. This action was brought to recover damages for the alleged breach of contract, including future profits. The jury returned a verdict of $3,000 for plaintiffs.

1. Whether or not the defendant ever entered into the contract with the plaintiffs for the breach of which this action was brought, was.

fairly a question for the jury upon the testimony. The written agreement produced in evidence was under the corporate seal of the defendant, and was therefore prima facie its contract. Emerson v. Pacific Coast & Norway Packing Co., 92 Minn. 523, 100 N. W. 365. Moreover, the record discloses conflict in the testimony as to whether or not its execution was in fact without previous authority by its board of directors; and there was considerable evidence as to the ratification of the agreement by the defendant. Upon the record the trial court also properly submitted to the jury the question of the breach of contract by the defendant.

2. The contract was not so peculiar in its nature as to deprive the plaintiffs of all damages upon proof of its breach. The facts in this case do not bring it within the rule that where a contract is optional on one side, and not mutual, it wants of sufficient consideration and is not binding. Bailey v. Austrian, 19 Minn. 465 (535); Tarbox v. Gotzian, 20 Minn. 122 (139); Stensgaard v. Smith, 43 Minn. 11, 44 N. W. 669. The contract at bar was not, properly speaking, unilateral. It was signed by both parties. Defendant agreed to pay a commission to the plaintiffs on sales. The plaintiffs accepted the contract and obligated themselves, during the whole period named, to use their best efforts to sell defendant's merchandise, and actually performed services in introducing and vending defendant's stock, and incurred and defrayed expenses thereunder. The promises were therefore not all on one side, there was mutuality of obligation; and an action for damages would lie upon its breach without cause. Ames-Brooks Co. v. Aetna Ins. Co., 83 Minn. 346, 86 N. W. 344; Fontaine v. Baxley, 90 Ga. 416, 17 S. E. 1015. The cases which will be hereinafter referred to also fully sustain the trial court on this point.

3. The real question in this case concerns the rulings of the trial court upon profits as damages. The defendant's principal contentions in this connection are, first, that profits are not recoverable as damages upon a breach of a contract to sell upon commission; and, second, that evidence of sales made by the principal after the breach of the contract by its repudiation or the discharge of the salesman is not admissable to show the extent of gains prevented.

The subject of profits as damages is a vexed and confused one in the current law. The decisions and text-books abound in loose gener-

alizations that as a rule future profits are not proper basis for a judgment in damages for an admitted legal wrong, but that in certain cases there are exceptions to the rule and profits may be recovered as damages. Even a casual examination of the authorities as a whole satisfies that it is exceedingly difficult to determine, as between the allowance and denial of profits as damages, which is the rule and which is the exception. Nor is it especially significant which conclusion on this point be reached. No presumption for or against the award has been established. It is also doubtful whether the current general formula of the courts is not too indefinite and uncertain to be of much practical avail. A frequently quoted statement of the rule is that of Justice Lamar, in Howard v. Stillwell-Bierce Mnfg. Co., 139 U. S. 199, 206, 11Sup. Ct. 501, 503: "Profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

Four principal considerations have been recognized and applied by the courts in determining when future profits are to be allowed as damages and when they are to be denied, namely: First, how far the contract under consideration specifically provides for the award of damages for prevented gains upon its breach, or reasonably implies such an award as a necessary effect of a natural construction of its terms; second, the degree of certainty with which the harm can be traced to the wrongful conduct complained of as its legal cause; third, the extent to which the inherent difficulties and uncertainties of calculation of amount of prevented gains renders the measure of damages speculative and untrustworthy; fourth, the possibility of applying to the controversy some more satisfactory standard of compensation. In the light of these considerations, the courts have weighed the evidence adduced in fact and possible in the nature of things to be proved.

A fruitful source of at least apparent judicial inconsistency on this subject is the failure to note and apply the obvious distinction between

cases of torts and cases of contracts. In the former the damages are not the results of a violation of an agreement. They are, logically, irrespective of any actual or of any implied contemplation of the parties. In the latter they are in a measure based upon mutual consent, expressed or implied. Moreover, there is often a radical difference in the remedies which are available to parties to an agreement, as distinguished from parties to a tort. There may be instances in which the actual damages may be substantially the same in both cases. Cincinnati, S-L Gas I. Co. v. Western S-L Co., 152 U. S. 200, 14 Sup. Ct. 523.

But the difficulty is as conspicuous, as it is important in legal effect, when profits are the very object of the contract itself and are clearly within the necessary purview of the parties making the agreement. A number of the cases cited by appellant denying the right to recover profits involve such actions ex delicto as to have little bearing on the present controversy. It would be naturally consistent to allow damages for prevented gains in this case, as the trial court has done here, and deny them, as this court did, in cases of wrongful seizure by an attachment (Casper v. Klippen, 61 Minn. 353, 63 N. W. 737; Lowenstein v. Monroe, 55 Iowa, 82, 7 N. W. 406), or by replevin (Williams v. Wood, 55 Minn. 323, 56 N. W. 1066), or in cases of conversion generally (Cushing v. Seymour, Sabin & Co., 30 Minn. 301, 15 N. W. 249), or in cases of actionable negligence (Simmer v. City of St. Paul, 23 Minn. 408).

Confusion has arisen also because in the early discussions of the subject, before the multiplication of authorities upon particular classes of cases, decisions just as applied to the state of facts presented by the respective records became unjust when distorted by application to different circumstances involving different issues and considerations. Adjudications that no sufficient evidence of profits was in point of fact adduced have been treated as cases holding that there could be no recovery upon any state of proof. In view of the superabundance of specific cases applying admitted general principles to particular and similar states of facts, it would seem to be a work of supererogation, as well as a source of misconception, to undertake to consider or reconcile or deduce much from the enormous number of cases on the general subject of profits as damages. An excellent collocation and

classification of authorities on the general subject will be found in a note to Wells v. National Life Assn., 53 L. R. A. 33.

The leading cases denying the right to recover as damages profits on sales made after the discharge of an agent selling upon commission, or after repudiation of the contract and before expiration of the term of employment, are to be found in the Alabama Reports. In Union v. Barton, 77 Ala. 148, 156, Stone, C. J. said: "In fact, the success of such enterprise [the sale of refined cotton seed oil] depends on so many contingencies that we can conceive of no means of making the necessary proof on which to found a verdict. No rule for such ascertainment can be predicated. Past success in the same or a similar enterprise will not do. Conditions may not always remain the same." And see Brigham v. Carlisle, 78 Ala. 243; Beck v. West, 87 Ala. 213, 219, 6 South. 70; Hair v. Barnes, 26 Ill. App. 580; Stern v. Rosenheim, 67 Md. 503, 10 Atl. 221, 307. And there is authority to the effect that where the employer discontinues his business, and thereby loses his agent profit of sales upon commission, there can be no recovery, because it was within contemplation of the parties that "the employee took the chances of his employer finding his business profitable and carrying it on." In re English & Scottish Marine Ins. Co., 5 Ch. App. 737; Pellet v. Manufacturers' & Merchants' Ins. Co., 104 Fed. 502, 43 C. C. A. 669. But see In re Patent Floor Cloth, Claim of Dean & Gilbert, 41 L. J. Eq. 476.

There can be no doubt, however, that the trend of authority and the weight of reason have established that an agent selling on commission upon breach of his contract by his employer without just cause is entitled to the profits, past and future, he would have realized if the defendant had performed his contract, and that evidence of sales made by the defendant within the unexpired period is admissible and should be considered by the jury, upon proper caution by the court to avoid excess or speculation, to show the proper extent of plaintiff's recovery.

The transition of opinion on this subject from the Alabama and some of the earlier cases in other courts to the present rule is well illustrated in Iowa. In Howe v. Bryson, 44 Iowa, 159, the measure of damages was determined to be, not the loss or profits, but the loss of time. The majority of the court held that few cases could be found in which profits have been disallowed as speculative in which the un-

certainty is greater than in such a case. There were, however, two dissenting opinions. In Hichhorn v. Bradley, 117 Iowa, 130, 140, 90 N. W. 592, a manufacturer revoked a contract of a jobber which had been appointed its agent for the introduction of a particular brand of cigars in certain territory before the expiration of the contract term. In course of a learned review of the specific and related authorities, McClain, J., said: "If the question considered in Howe Machine Co. v. Bryson * * * were now before us for the first time, we might, in view of the later authorities, incline to the view expressed in the dissenting opinion." It was accordingly held that there was no other measure of damages than the loss of profits, and that the evidence of the amount of sales of such cigars made after the breach was not objectionable on the ground that it authorized uncertain and speculative damages.

In New York (Washburn v. Hubbard, 6 Lans. 11) estimates of probable sales during the unexpired term were held inadmissible as evidence of future profits. The case did not lay down the rule, as seems to have been thought in Union v. Barton, 77 Ala. 148, 156, that under no circumstances could future profits be recovered. The leading case of Wakeman v. Wheeler, 101 N. Y. 205, 4 N. E. 264, held that the gains prevented by sales on commission are proper elements of damage, and that sales made by the employer after breach of the contract to sell on commission are admissible in evidence as evidence of the damages recoverable. And see Beeman v. Banta, 118 N. Y. 538, 542, 23 N. E. 887; Warren v. Holbrook, 118 N. Y. 586, 594, 23 N. E. 908; Bannatyne v. Florence, 77 Hun, 289, 28 N. Y. Supp. 334.

The rule in the federal court corresponds. In Wells v. National Life Assn., 99 Fed. 222, it was held that a life insurance agent, discharged before the expiration of his term without just cause, was entitled to have the jury consider as an element of his damages his commissions upon the amount of new business written by the defendant within his period through a new agent for the unexpired term. And see Taylor Mnfg. Co. v. Hatcher (C. C.) 39 Fed. 440; Moore v. Lawrence (C. C.) 16 Fed. 87; Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876.

The letter and spirit of many other authorities are to the same effect. Mueller v. Bethesda, 88 Mich. 390, 50 N. W. 319; Loud v. Campbell, 26 Mich. 239; Leonard v. Beaudry, 68 Mich. 312, 36 N. W. 88; Pitts-

burg v. Ashton, 184 Pa. St. 36, 39 Atl. 223; Dennis v. Maxfield, 10 Allen, 138; Blair v. Laflin, 127 Mass. 518; Martin v. Minnekahta, 7 S. D. 263, 64 N. W. 127; Haven v. Hudson, 12 La. An. 660; Stevenson v. Morris, 69 Miss. 232, 13 South. 834; Green v. Cole, 127 Mo. 587, 30 S. W. 135; Russell v. Brannen, 41 Neb. 567, 59 N. W. 901 (approving Mueller v. Bethesda); Wiley v. California (Cal.) 32 Pac. 522; Treat v. Hiles, 81 Wis. 280, 50 N. W. 896; Schumaker v. Heinemann, 99 Wis. 251, 74 N. W. 785. This rule, allowing future profits upon proper proof, accords alike with the general spirit of the earlier decisions in this state. Fairchild v. Rogers, 32 Minn. 269, 20 N. W. 191. And see Gœbel v. Hough, 26 Minn. 252, 2 N. W. 847, and the express holding of this court on the former appeal of this case in 92 Minn. 523, 526, 100 N. W. 365.

The reasoning by which this conclusion is reached is sound. The measure of damages must have relation to the contract itself. Such a contract as the one here under consideration furnishes the measure of damages, namely, profits. Profits were necessarily within the actual contemplation of the parties. They are, therefore, proper basis for the award of damages. 8 Am. & Eng. Enc. (2d Ed.) 622, subd. "b." No question has been raised, nor, it would seem, could well be raised, as to the connection of the loss of profits as the proximate result of defendant's breach. The principal contention of the defendant is that the damages are conjectural and speculative. The uncertainty does not reside in the nature of the business. Deep-sea fishing is not more speculative than mining, for breach of contract with respect to which future profits have been allowed as damages. Anvil Mining Co. v. Humble, supra. And see Dennis v. Maxfield, 10 Allen, 138. Nor is there any uncertainty as to the existence, but only as to the extent, of the profits. See Taylor v. Bradley, 39 N. Y. 129, and brief of counsel in Treat v. Hiles, 81 Wis. 280, 283, 50 N. W. 896. It is no exoneration to defendant that his misconduct, which has made inquiry as to the quantum of harm necessary, renders that inquiry difficult. Simpson v. London, 1 Q. B. Div. 274; Dart v. Laimbeer, 107 N. Y. 669, 14 N. E. 291. The best the law can do is to award approximate compensation. Its failure to do even and exact justice in such cases is not more conspicuous than in many others. No other remedy is available. To allow only for loss of time and expenses would put a premium upon breaking contracts and deny substantial justice.

The precise question as to the admissibility of evidence of sales made by the defendant through another agent subsequent to the breach of the contract and within the period covered by agreement with the plaintiffs has not been before fully decided by this court. It is the rule of this court that the damages are not a mere matter of discretion of the jury. Emerson v. Pacific Coast & N. P. Co., 92 Minn. 523, 526, 100 N. W. 365. The decisions of other courts, which have been discussed, determine that evidence of such sales should be received and considered by the jury. In this case the trial court very properly cautioned the jury to avoid speculation and excess, and to be careful not to give undue weight to the conjectural features of the case. When the jury was put in possession of all the facts as to the business transacted before and after the breach and within the term of the contract, it was given the best and natural means of forming as sound a judgment as could be predicated under the very difficult conditions. The plaintiff was entitled to the profit he would have made on his contract, had he been permitted to perform the same, including the profits both before and after the breach.

4. There were other assignments of error in the admission of evidence, the merits of which it is unnecessary to determine. We do not regard them as being of sufficient importance to invalidate the verdict, if it be conceded that they involve erroneous rulings.

Order appealed from is affirmed.