## PREJEAN v. DELAWARE–LOUISIANA FUR–TRAPPING CO., Inc.

(Circuit Court of Appeals, Fifth Circuit. May 18, 1926.)

No. 4731.

1. **Damages** ⊸22.

Party deprived of contemplated gains or profits reasonably certain to result by breach of contract is entitled to recover amount of loss, unless too remote or uncertain.

2. **Damages** ⊸6.

Uncertainty as to amount of damage from breach of contract does not prevent recovery, if evidence is sufficient to enable court or jury to make fair and reasonable finding.

3. **Damages** ⊸6.

Party who has broken contract cannot escape liability because of lack of perfect measure of damages caused by breach, if evidence furnishes sufficient data for approximate estimate.

4. **Principal and agent** ⊸41—Breach of contract employing agent to engage trappers to trap fur-bearing animals on commission basis held direct cause of loss of gains or profits.

Breach of contract of employment as agent for purpose of engaging trappers to trap fur-bearing animals on commission basis *held* direct

cause of loss of gains or profits to accrue to agent.

**5. Evidence ⬅➡20(1).**
It is matter of common knowledge that trapping of fur-bearing animals is extensive and profitable industry in Louisiana.

**6. Courts ⬅➡328(2)—Action for breach of contract employing plaintiff as agent on commission to engage trappers to trap furs on commission basis held to involve jurisdictional amount.**
Action for damages for breach of contract employing plaintiff as agent on commission to engage trappers to trap fur-bearing animals during certain months *held* to involve amount within jurisdiction of court.

In Error to the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Suit by Felix Prejean against the Delaware-Louisiana Fur-Trapping Company, Inc. Judgment dismissing the suit (8 F.[2d] 357), and plaintiff brings error. Reversed and remanded for a new trial.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for plaintiff in error.

Rene A. Viosca, of Hammond, La., for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is a writ of error sued out by the plaintiff below from a judgment sustaining exceptions to his petition as it was amended and dismissing the suit. The original petition, filed February 5, 1925, as it was amended on March 14, 1925, contained allegations to the following effect:

In October, 1924, the defendant, a Delaware corporation, entered into a contract with plaintiff, a citizen of Louisiana, whereby the former employed the latter as its agent to employ and obtain contracts with trappers to go upon described Louisiana lands of the defendant, aggregating 99,512 acres, and there trap fur-bearing animals during the months of November and December, 1924, and January and February, 1925, the trappers to get 75 per cent. of the market price value of the furs at the time of delivery; the defendant to retain 25 per cent. of such value, 10 per cent. whereof it was to pay to plaintiff for his services. Plaintiff performed his part of the contract by obtaining 50 competent and experienced trappers, who, after all of them were accepted by the defendant, which signed written contracts with them, when they appeared and offered to comply with their several contracts, being ready and willing to do so, were not permitted to go upon said lands; the defendant breaching its obligation to permit them to do so.

When the plaintiff, early in November, 1924, with the trappers employed by him, went to said land to start performance of their part of the contracts, said land was occupied by other trappers. Each of the trappers employed by plaintiff during the period of time covered by the contract between plaintiff and defendant could and would have captured not less than 5,000 fur-bearing animals, the fur of each of which was worth in the market at the time and place of delivery not less than 70 cents, or $3,500 for the furs of each of the 50 trappers. The trappers on said land during said four months caught thereon and sold an average of 5,000 furs each, the maximum being 6,000 and the minimum 4,000, the average price of such furs being 70 cents. The lower estimate contained in the original petition of the number of furs the trappers engaged by plaintiff would have obtained on said lands during the fur-trapping season for which they were engaged was based upon the furs got by trappers on said lands under the same conditions for many years continuously prior to the season of 1924 and 1925. Under the agreement between plaintiff and defendant the plaintiff was to pay out of his own pocket all expenses, and his expenses up to the time the contract was breached by the defendant amounted to about the sum of $350.

The petition was excepted to on the grounds that it was too vague and indefinite, that it disclosed no right or cause of action, and that the court was without jurisdiction ratione materiæ. The opinion rendered by the District Judge shows that his action in sustaining the exceptions to the petition was the result of the conclusion that the amount recoverable by the plaintiff was insufficient to give the court jurisdiction of the case, the damages claimed because plaintiff was deprived of the stipulated share of the value of the furs which, but for the breach of the contract, would have been obtained by the trappers he engaged, being regarded as not recoverable, because they were remote, speculative, and uncertain, making them incapable of proof by such evidence as the law requires.

[1-3] If, from the nature or circumstances of a contract, it may be inferred or presumed that the parties to it contemplated that profits or gains would accrue to one of them from performance, and it is reasonably certain that performance of the contract would have that result, the party who is deprived of such gains or profits by a breach of the contract is enti-

tled to recover the amount of his loss so caused, unless such loss is open to the objection of remoteness or uncertainty. Uncertainty as to the amount of the damages does not prevent a recovery, if evidence adduced is sufficient to enable the court or jury to make a fair and reasonable finding in respect thereto. A party who has broken his contract cannot escape liability because of a lack of a perfect measure of the damages caused by the breach. It is enough if damages are the direct result of the breach and the evidence furnishes sufficient data for an approximate estimate of the amount thereof. Anvil Mining Co. v. Humble, 153 U. S. 540, 14 S. Ct. 876, 38 L. Ed. 814; Emerson v. Pacific Coast, etc., Packing Co., 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 113 Am. St. Rep. 603, 6 Ann. Cas. 973; Cothern v. Julia Lumber Co., 140 La. 733, 73 So. 845; Schleider v. Dielman, 44 La. Ann. 462, 10 So. 934; Kelly v. Devall, 41 La. Ann. 235, 5 So. 657; Des Allemands Lumber Co. v. Morgan City Timber Co., 117 La. 1, 41 So. 332; Brown v. Producers' Oil Co., 134 La. 678, 64 So. 674; Malone v. Reynolds, 213 Ala. 681, 105 So. 891; Macan v. Scandinavia Belting Co., 264 Pa. 384, 107 A. 750, 5 A. L. R. 1502.

[4, 5] The allegations of the petition show that by the complained of breach of contract the plaintiff was deprived of one-tenth of one-fourth of the market value of furs of all fur-bearing animals which, but for the breach, would have been captured by 50 experienced trappers operating during an entire trapping season on nearly 100,000 acres of land located in territory where fur-bearing animals are trapped in large numbers. It is not open to question that the breach alleged was the direct, not a remote, cause of the alleged deprivation of gains or profits. The effect of the court's ruling was to deprive the plaintiff of the opportunity to prove the amount of gains or profits he would have realized if the alleged contract had been carried out. It is a matter of common knowledge that the trapping of fur-bearing animals, principally muskrats, is an extensive and profitable industry in Louisiana, engaged in as a regular means of livelihood by a considerable part of the population of that state.

[6] Certainly we do not judicially know that one's loss by being deprived of one-tenth of one-fourth of the market value of all the furs that would have been obtained by 50 experienced trappers during four months trapping operations is incapable of being proved to amount to more than $2,650, which amount added to $350, the out of pocket amount alleged to have been expended by plaintiff in carrying out his part of the contract, would be enough to make the matter in controversy one within the court's jurisdiction. Mere conjecture or speculation as to the amount of gains or profits lost by the alleged breach may not properly be made the basis of a finding in that regard; but we cannot affirm that it is impossible to adduce evidence of sufficient data to support a fair and reasonable estimate in regard thereto.

It is not impossible that evidence capable of being adduced would show that fur-bearing animals were plentiful on the land mentioned during the time the 50 trappers were engaged by plaintiff to conduct trapping operations thereon; that the habits of such animals are such as to make the trapping of them not difficult; that the conditions for trapping on that land were favorable during the four months mentioned; the number of fur-bearing animals caught by each trapper operating on that or similar land in the vicinity during the four months mentioned or during preceding trapping seasons; that in experience, skill, and industry, and as to methods of trapping operations, the trappers engaged by plaintiff were like those who trapped on the lands mentioned during the trapping season dealt with in the contract; and other facts or circumstances that might properly be considered in determining approximately the number and kind of fur-bearing animals that would have been caught by the trappers engaged by the plaintiff, if they had not been kept from carrying on the contemplated trapping operations.

In the case of Anvil Mining Co. v. Humble, supra, the Supreme Court of the United States sustained an award as damages of the amount of profits of which the plaintiff was deprived as a result of not being permitted to carry out his contract to mine ore from an iron mine. The award included expected profits from mining ore from levels of the mine which had not been opened when the contract was made and when it was breached. The case of Emerson v. Pacific Coast, etc., Packing Co., supra, arose out of a contract between a corporation engaged in the business of catching and packing fish, especially salmon, on the coast of Alaska, and one who was employed by it to sell 85 per cent. of its entire pack, upon a brokerage of 5 per cent., for a period of two years, at a selling price to be agreed on by the parties to the contract. The corporation annulled the contract after the person so employed had sold a large part of the pack of the first year covered by the contract. The Supreme Court of Minnesota held that, on the evidence adduced, such per-

son was entitled to recover as damages the amount of profits or gains which, but for the breach of the contract, he would have realized from the sale of fish packed from the catch during the remainder of the time covered by the contract. It well may be that expected profits or gains from muskrat trapping operations in the part of Louisiana in which that business is extensively carried on are not more speculative than profits from mining ore in an undeveloped part of a mine, or which are dependent on deep sea fishing operations.

We conclude that the court erred in making a ruling having the effect of depriving the plaintiff in error of the opportunity of proving the amount of the loss he sustained as a result of the alleged breach of contract. Because of that error the judgment is reversed, and the cause is remanded for a new trial.

Reversed.